2025-___

_____

**United States Court of Appeals for the Federal Circuit**

_____

In re Google LLC, Samsung Electronics Co., Ltd.,
Samsung Electronics America, Inc.

*Petitioners*

_____

On petition for a writ of mandamus to the United States Patent and
Trademark Office, Patent Trial and Appeal Board,
in Nos. IPR2024-01464, IPR2024-01465

_____

**Petition for a Writ of Mandamus**

_____

Ali R. Sharifahmadian
ARNOLD & PORTER KAY SCHOLER LLP
601 Massachusetts Ave. N.W.
Madison, Wisconsin 53703
Ali.Sharifahmadian@arnoldporter.com
(202) 942–6370

*Counsel for Petitioners Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc.*

Nathan K. Kelley
Jonathan I. Tietz
PERKINS COIE LLP
700 Thirteenth Street N.W., Suite 800
Washington, D.C. 20005
NKelley@perkinscoie.com
(202) 654–6200

Andrew T. Dufresne
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, Wisconsin 53703
ADufresne@Perkinscoie.com
(608) 663–7460

*Counsel for Petitioner Google LLC*

August 18, 2025

**Certificate of Interest for petitioner Google LLC**

I certify that the information below is complete to the best of my knowledge.

Date: August 18, 2025          Signature:  /s/Nathan K. Kelley

                              Name:      Nathan K. Kelley

| 1. Represented Entity | 2. Real Party in Interest | 3. Parent Corporations and 10% Stockholders |
|---|---|---|
| Google LLC | None | XXVI Holdings Inc.; Alphabet Inc. |
|  |  |  |

| 4. Other Legal Representatives |
|---|
| O'Melveny & Myers LLP: Benjamin M. Haber; Jeff Baxter; Argirenia Zervos; Kyla Butler |
| Arnold & Porter Kaye Scholer LLP: Patrick Reidy; Albert J. Boardman; Douglas L. Clark |

| 5. Related Cases |
|---|
| *See* separate notice. |

| 6. Organizational Victims and Bankruptcy Cases |
|---|
| None |

**Certificate of Interest for petitioners Samsung Electronics Co., Ltd.
Samsung Electronics America, Inc.**

I certify that the information below is complete to the best of my knowledge.

Date: August 18, 2025          Signature:  /s/Ali R. Sharifahmadian

                              Name:      Ali R. Sharifahmadian

| 1. Represented Entity | 2. Real Party in Interest | 3. Parent Corporations and 10% Stockholders |
|---|---|---|
| Samsung Electronics Co., Ltd. | None | N/A |
| Samsung Electronics America, Inc. | | Samsung Electronics Co. Ltd. |

| 4. Other Legal Representatives |
|---|
| O'Melveny & Myers LLP: Benjamin M. Haber; Jeff Baxter; Argirenia Zervos; Kyla Butler |
| Arnold & Porter Kaye Scholer LLP: Patrick Reidy; Albert J. Boardman; Douglas L. Clark |

| 5. Related Cases |
|---|
| *See* separate notice. |

| 6. Organizational Victims and Bankruptcy Cases |
|---|
| None |

# Table of Contents

Certificate of Interest for petitioner Google LLC .................................................i

Certificate of Interest for petitioners Samsung Electronics Co., Ltd. Samsung Electronics America, Inc. ........................................................... ii

Table of Authorities ......................................................................................v

Table of Abbreviations & Conventions .........................................................xi

Related Cases............................................................................................. xiii

Relief Sought.................................................................................................1

Introduction ..................................................................................................1

Issue Statement .............................................................................................3

Background ...................................................................................................4

    A.   In 2022, the Director issued "binding" guidance proclaiming that the Board "will not" discretionarily deny an IPR under *Fintiv* if the petitioner makes a *Sotera* stipulation .............................4

    B.   Cerence sued Samsung in Texas, asserting five patents and dozens of claims.........................................................................7

    C.   Samsung and non-litigant Google jointly petitioned for IPR, and Samsung made a *Sotera* stipulation, in reliance on the agency's then-"binding" guidance ......................................7

    D.   After discretionary-denial issues were briefed, the Acting Director rescinded the 2022 Guidance .................................9

    E.   The Board denied institution based on the retroactivity of the Rescission and a new demand for petitioners to give up defenses beyond the scope of IPRs.....................................11

Legal Standard ...........................................................................................14

Why Mandamus Is Warranted .....................................................................14

I.    Petitioners' right to relief is clear and indisputable .................................14

A.   *Mylan* does not bar mandamus ..........................................15

B.   The USPTO violated the Constitution and the APA by retroactively making *Sotera* stipulations non-dispositive ...............18

1.   The agency violated Petitioners' due process rights ..............19

2.   The agency violated the APA .....................................25

a.   The Rescission was a rule change effected without notice-and-comment rulemaking ...................26

b.   Regardless of whether the Rescission was a rule or a policy change, its retroactive application violated the APA .................................................29

c.   The agency also violated the APA under the change-in-position doctrine ............................30

C.   The USPTO's extra-statutory expansion of statutory IPR estoppel violates the Constitution's separation of powers .............34

II.   Petitioners have no other adequate means to obtain relief .....................38

III.  Mandamus relief is appropriate under the circumstances .......................38

Conclusion ........................................................................41

Certificates of Compliance with Type–Volume Limitation and Authority

Proof of Service

# Table of Authorities

**Cases**                                                                      **Pages**

*Apple Inc. v. Fintiv, Inc.*,
    IPR2020-00019, 2020 WL 2126495 (P.T.A.B. Mar. 20, 2020) ....... 4, 5, 6, 8

*Apple Inc. v. Iancu*,
    No. 20-cv-6128 (N.D. Cal. Aug. 31, 2020), ECF No. 1 .............................. 6, 7

*Apple Inc. v. Vidal*,
    63 F.4th 1 (Fed. Cir. 2023) ....................................................... 15, 16

*Barnhart v. Sigmon Coal Co.*,
    534 U.S. 438 (2002) ....................................................................... 37

*Bowen v. Georgetown Univ. Hosp.*,
    488 U.S. 204 (1988) ...................................................................... 29

Br. of Dell Inc. et al. as *Amici Curiae, Cuozzo Speed Techs., LLC v.
Lee*, No. 15-446, 2016 WL 1319652 (U.S. Mar. 30, 2016) ........................... 39

*City of Providence v. Barr*,
    954 F.3d 23 (1st Cir. 2020) ............................................................. 37

*Civil Aeronautics Bd. v. Delta Air Lines, Inc.*,
    367 U.S. 316 (1961) ....................................................................... 37

*Cleveland Bd. of Educ. v. Loudermill*,
    470 U.S. 532 (1985) ....................................................................... 19

*Coal. for Common Sense in Gov't Procurement v. Sec'y of Veterans
Affs.*, 464 F.3d 1306 (Fed. Cir. 2006) ............................................... 26

*Cuozzo Speed Techs. v. Lee*,
    579 U.S. 261 (2016) ............................................................... 4, 33, 35

*Deckers Corp. v. United States*,
    752 F.3d 949 (Fed. Cir. 2016) ....................................................... 17

*Dell Inc. v. Universal Connectivity Techs. Inc.*,
IPR2024-01478, 2025 WL 1090038 (P.T.A.B. Apr. 7, 2025)...................... 31

*DHS v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020).............................................................16, 28, 33

*Durr v. Nicholson*,
400 F.3d 1375 (Fed. Cir. 2005) ...............................................29

*Encino Motorcars, LLC v. Navarro*,
579 U.S. 211 (2016) ......................................................... 32, 33

*FDA v. Wages & White Lion Invs., L.L.C.*,
145 S. Ct. 898 (2025) ...................................................30, 31, 32

*Furlong v. Shalala*,
156 F.3d 384 (2d Cir. 1998)...................................................... 21

*Gen. Elec. Co. v. EPA*,
290 F.3d 377 (D.C. Cir. 2002) ..................................................26

*HP Inc. v. Universal Connectivity Techs. Inc.*,
IPR2024-01428, 2025 WL 1040187 (P.T.A.B. Apr. 8, 2025)...................... 31

*IGT v. Zynga Inc.*,
No. 23-2262, 2025 WL 2045301 (Fed. Cir. July 22, 2025) .......................... 17

*In re Chestek PLLC*,
92 F.4th 1105 (Fed. Cir. 2024)................................................... 27

*In re Google LLC*,
949 F.3d 1338 (Fed. Cir. 2020) .............................................38, 39

*In re Motorola Sols., Inc.*,
No. 25-134 (Fed. Cir. June 27, 2025), ECF No. 15-2.................................... 40

*In re MSTG, Inc.*,
675 F.3d 1337 (Fed. Cir. 2012) .............................................. 39, 40

*In re Palo Alto Networks, Inc.*,
44 F.4th 1369 (Fed. Cir. 2022).............................................14, 38

*In re Power Integrations, Inc.,*
    899 F.3d 1316 (Fed. Cir. 2018) ..................................................... 17

*In re SAP Am., Inc.,*
    No. 25-132 (Fed. Cir. July 18, 2025), ECF No. 39 .................................. 15, 40

*Ingenico Inc. v. IOENGINE, LLC,*
    136 F.4th 1354 (Fed. Cir. 2025) .................................................... 36

*Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence,*
    927 F.2d 1111 (10th Cir. 1991) .................................................... 20

*Ky. Dep't of Corrections v. Thompson,*
    490 U.S. 454 (1989) ..........................................................19, 20, 21

*Laborde-Garcia v. Puerto Rico Tel. Co.,*
    993 F.2d 265 (1st Cir. 1993) ...................................................... 20

*Landgraf v. USI Film Prods.,*
    511 U.S. 244 (1994) ............................................................... 24

*Lincoln v. Vigil,*
    508 U.S. 182 (1993) ............................................................... 29

*Mexichem Fluor, Inc. v. EPA,*
    866 F.3d 451 (D.C. Cir. 2017) ..................................................... 23

*Motorola Sols, Inc. v. Stellar, LLC,*
    IPR2024-01284, 2025 WL 1503220 (P.T.A.B. May 23, 2025) ....................24

*Motorola Solutions, Inc. v. Stellar, LLC,*
    IPR2024-01205, Paper 19 (P.T.A.B. Mar. 28, 2025) ................................ 35

*Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V.,*
    989 F.3d 1375 (Fed. Cir. 2021) ...............................................14, 15, 38

*Nikon Corp. v. Optimum Imaging Techs., LLC,*
    IPR2024-01374, 2025 WL 1249839 (P.T.A.B. Apr. 29, 2025) .................... 31

*Olim v. Wakinekona,*
    461 U.S. 238 (1983) ............................................................... 19

*Perry v. Sindermann,*
    408 U.S. 593 (1972) ..................................................................... 21

*Samsung Elecs. Co., Ltd. v. Cerence Operating Co.,*
    IPR2024-00978 (P.T.A.B. July 24, 2024)...................................... 8

*Samsung Elecs. Co., Ltd. v. Cerence Operating Co.,*
    IPR2024-00979 (P.T.A.B. July 24, 2024)...................................... 8

*Samsung Elecs. Co., Ltd. v. Cerence Operating Co.,*
    IPR2024-01267 (P.T.A.B. Aug. 9, 2024) ....................................... 8

*Samsung Elecs. Co. v. Cerence Operating Co.,*
    IPR2024-00978, 2025 WL 495613 (P.T.A.B. Feb. 13, 2025) ............... 11, 18

*Samsung Elecs. Co. v. Cerence Operating Co.,*
    IPR2024-00979, 2025 WL 355171 (P.T.A.B. Jan. 31, 2025) ...................... 11

*Samsung Elecs. Co. v. Cerence Operating Co.,*
    IPR2024-01267, 2025 WL 355169 (P.T.A.B. Jan. 31, 2025)....................... 11

*SAS Inst., Inc. v. Iancu,*
    584 U.S. 357 (2018) ............................................................... 25, 37

*Sotera Wireless, Inc. v. Masimo Corp.,*
    IPR2020-01019, 2020 WL 7049373 (P.T.A.B. Dec. 1, 2020) ................ 5, 34

*Tarpeh-Doe v. United States,*
    904 F.2d 719 (D.C. Cir. 1990) ..........................................19, 20, 21

*Tesla, Inc. v. Intell. Ventures II LLC,*
    IPR2025-00217, Paper 9 (P.T.A.B. June 13, 2025) ....................... 35

*Tesla, Inc. v. United States,*
    IPR2025-00341, Paper 12 (P.T.A.B. June 13, 2025) .................... 35

*Thryv, Inc. v. Click-to-Call Techs., LP,*
    590 U.S. 45 (2020)................................................................. 17

*United States v. Mead Corp.,*
    533 U.S. 218 (2001)................................................................28

*Unwired Planet, LLC v. Google Inc.,*
    841 F.3d 1376 (Fed. Cir. 2016) .................................................. 33

*Util. Air Regul. Grp. v. EPA,*
    573 U.S. 302 (2014) ................................................................... 37

*Wash. Legal Clinic for the Homeless v. Barry,*
    107 F.3d 32 (D.C. Cir. 1997) ....................................................20

*Webster v. Doe,*
    486 U.S. 592 (1988) ................................................................... 15

*Woodward v. United States,*
    871 F.2d 1068 (Fed. Cir. 1989) ............................................... 15

**STATUTES**

5 U.S.C. §552(a)(2)(B) .....................................................................28

5 U.S.C. §553 ....................................................................................27

5 U.S.C. §553(b) ..............................................................................26

5 U.S.C. §553(c) ...............................................................................28

5 U.S.C. §706 ...................................................................................34

5 U.S.C §706(2)(A) ..........................................................................26

5 U.S.C §706(2)(D) ..........................................................................24

28 U.S.C. §1651(a) ...........................................................................38

 35 U.S.C. §314(a) .......................................................................... 22

35 U.S.C. §314(b) .............................................................................. 4

35 U.S.C. §314(c) ............................................................................. 22

35 U.S.C. § 314(d) ..........................................................4, 15, 16, 25

35 U.S.C. §315(e)(2) ........................................................................36

35 U.S.C. §316(a) ...................................................................26, 27

35 U.S.C. §316(a)(2) .................................................................. 16

Administrative Procedure Act ................................................... 25

America Invents Act .................................... 4, 11, 26, 38, 40

Public Interest Pat. Law .......................................................... 40

OTHER AUTHORITIES

37 C.F.R. §42.15(a)(1) ............................................................... 22

37 C.F.R. §42.15(a) ................................................................... 39

Anthony Insogna, *Acting Director Denies IPR Institution Based on "Settled Expectations,"* PTAB Litig. Blog (July 8, 2025), https://www.ptablitigationblog.com/acting-director-denies-ipr-institution-based-on-settled-expectations/ ......................................... 27

*Discretion to Institute Trials Before Patent Trial & Appeal Board,* 85 Fed. Reg. 66,502, 66,505 (Oct. 20, 2020) .................................... 6

https://www.uspto.gov/patents/ptab/faqs/interim-processes-workload-management [https://perma.cc/2BDY-X2JL] .......................... 27

https://www.uspto.gov/sites/default/files/documents/guidance_memo_on_interim_procedure_recission_202503 24.pd ........................................................................................10

Ryan Davis, *PTAB Ramps Up Fintiv Denials After Withdrawal of Memo,* LAW360 (May 13, 2025), https://www.law360.com/articles/2339744 ............................. 27

*Rules for Practice for Trials Before the Patent Trial & Appeal Board,* 77 Fed. Reg. 6879, 6897 (Feb. 9, 2012) ........................................22

Theresa Schliep, *With Discretionary Denials, PTAB Accepting Fewer Petitions* (July 16, 2025), https://www.law360.com/ip/articles/2360783/ ...................................... 27

# Table of Abbreviations & Conventions

| | |
|---|---|
| 2022 Guidance | Memorandum from Director Vidal to Board, *Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation* (June 21, 2022) |
| 2025 Memo | Memorandum from Chief APJ Boalick to Board, *Guidance on USPTO's Rescission of "Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation"* (Mar. 24, 2025) |
| Acting Director | Acting Director of the U.S. Patent & Trademark Office |
| AIA | Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011) |
| APJ | administrative patent judge |
| Board or PTAB | Patent Trial and Appeal Board |
| Cerence | respondent Cerence Operating Co. |
| DACA | Deferred Action for Childhood Arrivals |
| Director | Director of the U.S. Patent and Trademark Office |
| Google | petitioner Google LLC |
| IPR | *inter partes* review |
| Petitioners | Google and Samsung |
| Rescission | USPTO, *USPTO Rescinds Memorandum Addressing Discretionary Denial Procedures* (Feb. 28, 2025) |
| Samsung | collectively, petitioners Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc. |
| USPTO | United States Patent and Trademark Office |

| | |
|---|---|
| VA | United States Department of Veterans Affairs |
| ($x$:$y$-$z$) | column $x$, lines $y$-$z$ |
| '461 patent | U.S. Patent No. 11,393,461 |
| '750 patent | U.S. Patent No. 11,087,750 |

**Related Cases**

No other appeal relating to this case has been before this or any other appellate court.

This case is related to *Cerence Operating Co. v. Samsung Electronics Co.*, 2:23-cv-00482-JRG-RSP (E.D. Tex.), in which Cerence asserts the challenged '461 and '750 patents against Samsung.

## Relief Sought

Petitioners respectfully request that this Court issue a writ compelling the USPTO to apply the discretionary-denial guidance in place when the IPR petitions in Nos. IPR2024-01464 and -01465 were filed.[1]

## Introduction

Petitioners Google and Samsung filed five IPR petitions challenging Cerence's patents over a few months. Each petition was diligently prepared and filed within the statutory limitations period. Each presented compelling merits. And each was accompanied by a nonrefundable request fee the USPTO justified based on the cost of a panel of APJs considering its merits. For certainty in view of co-pending litigation, Samsung made a *Sotera* stipulation promising not to pursue before the district court any grounds it did or could raise in the IPRs. That was a sure way to avoid a *Fintiv* denial because the Director had years earlier constrained her discretion and instructed the Board not to deny institution on *Fintiv* grounds if a *Sotera* stipulation came

_____

[1] Because the USPTO issued a single Director review denial for both IPRs, the institution denials were substantively identical, and the relief requested is the same, Petitioners have challenged both denials in a single mandamus petition.

before an institution decision. Google could thus join Samsung's petition without worry that Samsung's litigation participation would be held against it. And indeed, the first three IPRs were instituted because of that *Sotera* stipulation.

The new Acting Director rescinded that guidance without explanation. Even though the facts did not materially differ from the three instituted IPRs, the USPTO, exercising the Acting Director's delegated discretion, denied the last two petitions—those at issue here—on grounds that the *Sotera* stipulation did not go far enough. The USPTO applied the rescission retroactively without explanation and despite Petitioners' reasonable reliance on the prior guidance.

That was unlawful in three ways. *First*, the USPTO violated due process when it made the Rescission retroactive, vitiating Petitioners' interest in the Director's surrender of some discretion. *Second*, it violated the APA: the Rescission came without notice-and-comment rulemaking, improperly applied retroactively, and violated the change-in-position doctrine because it came without explanation or consideration of reliance interests. *Third*, the USPTO

acted outside its limited grant of statutory authority by pressuring petitioners into surrendering defenses that cannot be raised in IPR, effectively expanding the scope of the IPR-estoppel statute.

*Cuozzo* and *SAS* concluded that the Director enjoyed unreviewable discretion in applying the statutory institution standard, but also made clear the USPTO could not use that general proposition to insulate constitutional problems and shenanigans. Retroactively changing the rules, flouting the requirements of the APA, and expanding the reach of the estoppel provision are such errors.

Mandamus is warranted and the remedy Petitioners seek is modest: the Court should order the USPTO to consider Petitioners' IPR2024-01464 and IPR2024-01465 petitions under the guidelines in place when they were filed.

## Issue Statement

1.     Did the USPTO violate the Constitution's due process clause and the APA when the Rescission and the 2025 Memo retroactively made *Sotera* stipulations non-dispositive?

2.     Did the USPTO exceed its statutory authority—violating the APA and the Constitution's separation of powers—by requiring petitioners

to forgo invalidity defenses beyond the scope of IPR as a condition to weighing *Sotera*-style stipulations against discretionary denial?

## Background

**A.    In 2022, the Director issued "binding" guidance proclaiming that the Board "will not" discretionarily deny an IPR under *Fintiv* if the petitioner makes a *Sotera* stipulation**

The America Invents Act (AIA) allocated IPR institution decisions to the Director of the USPTO. 35 U.S.C. § 314(b). Section 314(d) precludes review of institution decisions "where the grounds for attacking the decision … consist of questions that are closely tied to the application and interpretation of statutes related to the … decision to initiate inter partes review." *Cuozzo Speed Techs. v. Lee*, 579 U.S. 261, 274-75 (2016). But § 314(d) does not preclude review of what the Supreme Court termed "shenanigans," such as "a due process problem," or situations in which the agency "act[s] outside its statutory limits." *Id.* at 275. The Director's discretion is thus not boundless.

In 2020, the Director designated as precedential a six-factor test to guide discretionary denial when there are related district-court proceedings. *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, 2020 WL 2126495, at \*2 (P.T.A.B.

Mar. 20, 2020) (precedential). The *Fintiv* framework considered the likelihood of a stay, the trial date, investment in the parallel litigation, whether the parties in the IPR and litigation were the same, and other circumstances such as the merits. *Id. Fintiv* also considered the presence of overlapping issues, i.e., whether "the petition include[d] the same or substantially the same claims, grounds, arguments, and evidence" as the parallel litigation. *Id.* at *5. Whether both proceedings would involve "the same prior art" was not the whole inquiry. *Id.* at *6.

The Director refined the *Fintiv* framework through another precedential decision directed to the issue-overlap factor. *Sotera Wireless, Inc. v. Masimo Corp.*, IPR2020-01019, 2020 WL 7049373, at *7 (P.T.A.B. Dec. 1, 2020) (precedential in pertinent part). Under *Sotera*, a promise not to pursue in district court "any … ground … that was raised or *could have reasonably been raised in an IPR*" sufficed to "mitigate[] any concerns of duplicative efforts between the district court and the Board, as well as concerns of potentially conflicting decisions." *Id.* (emphasis omitted). That stipulation was enough to "ensure that an *inter partes* review is a 'true alternative' to the district court proceeding." *Id.*

Faced with allegations that *Fintiv* violated the APA, *see* Complaint, *Apple Inc. v. Iancu*, No. 20-cv-6128 (N.D. Cal. Aug. 31, 2020), ECF No. 1, the USPTO requested public comments on its discretionary-denial policies. *Request for Comments on Discretion to Institute Trials Before Patent Trial & Appeal Board*, 85 Fed. Reg. 66,502, 66,505 (Oct. 20, 2020). After considering "822 comments from a wide range of stakeholders," the Director issued the 2022 Guidance that partially cabined discretionary denials. Appx38-39. (citing 35 U.S.C. §3(a)(2)(A)). The Director deemed the 2022 Guidance "binding" on the exercise of her delegated discretion until it could be superseded by notice-and-comment rulemaking. Appx39.

The 2022 Guidance restricted exercise of discretion under *Fintiv* in specific circumstances. It announced that if a petitioner makes a *Sotera* stipulation, agreeing "not to pursue in a parallel district court proceeding the same grounds as in the petition or any grounds that *could have reasonably been raised* in the petition," then the Board "*will not* discretionarily deny institution" on *Fintiv* grounds. Appx43-44 (emphases added). Because "the grounds the PTAB resolves will differ" from those left for decision before the district court in such cases, a stipulation would "avoid[] inconsistent outcomes." Appx43-44.

### B. Cerence sued Samsung in Texas, asserting five patents and dozens of claims

Cerence sued Samsung in the Eastern District of Texas, accusing it of infringing five patents that "generally relate to improvements in handwritten characters recognition, voice messaging[,] and voice command monitoring for electronic devices." Complaint, *Cerence Operating Co. v. Samsung Elecs. Co.*, No. 23-cv-00482 (E.D. Tex. Oct. 13, 2023), ECF No. 1. Cerence did not specify which claims it was asserting until it served infringement contentions in March 2024. Appx234. Cerence further adjusted the set of asserted claims in August 2024. Appx246.

### C. Samsung and non-litigant Google jointly petitioned for IPR, and Samsung made a *Sotera* stipulation, in reliance on the agency's then-"binding" guidance

Google and Samsung jointly filed the two IPR petitions at issue here in October 2024. *E.g.*, Appx60-155.[2] Those petitions challenged U.S. Patent Nos. 11,393,461 and 11,087,750, two of the five patents Cerence had asserted

---

[2] Because the discretionary-denial briefing and issues were the same, Petitioners cite IPR2024-01464 here for simplicity.

against Samsung; additional petitions challenged the other asserted patents.[3] Samsung moved to stay the Texas litigation pending IPR. Appx9. The district court denied a stay because the IPRs had not yet been instituted, but it did so without prejudice to a renewed motion upon institution. Appx9. The district court also set the case for trial for the same date, and in the same courtroom, as eleven other cases. Appx11.

Each petition raised four obviousness grounds with five total references among them. *See, e.g.*, Appx76. Each was accompanied by a lengthy expert declaration detailing those grounds, as well as the technological backdrop of the art. *See, e.g.*, Appx76-144 (citing Ex. 1002 throughout). In preparing the petitions, Google and Samsung addressed the *Fintiv* factors under precedent and guidance the agency deemed "binding." *See, e.g.*, Appx145-149. In particular, they explained that the investment, overlap, and merits factors weighed against denial under *Fintiv*. *See, e.g.*, Appx147-149.

---

[3] *Samsung Elecs. Co., Ltd. v. Cerence Operating Co.*, IPR2024-00978 (P.T.A.B. July 24, 2024); *Samsung Elecs. Co., Ltd. v. Cerence Operating Co.*, IPR2024-00979 (P.T.A.B. July 24, 2024); *Samsung Elecs. Co., Ltd. v. Cerence Operating Co.*, IPR2024-01267 (P.T.A.B. Aug. 9, 2024).

Cerence's preliminary response said almost nothing about the petitions' merits other than they were not "compelling." Appx174. Instead, Cerence pushed for denial under *Fintiv*, arguing issue overlap based on Samsung's citation of some of the same references before the district court. Appx172. Cerence also argued that trial was set for a few months before the final written decision would come due and insisted, despite the wildly overbooked trial date, there was "no evidence to suggest" the trial would be delayed. Appx168-170.

Samsung further submitted a *Sotera* stipulation. Appx268. (Google was not a party to any parallel litigation and so had nothing to stipulate.)  That stipulation provided an independently sufficient basis to rule out *Fintiv*-based discretionary denial in view of the 2022 Guidance.

### D.   After discretionary-denial issues were briefed, the Acting Director rescinded the 2022 Guidance

By late February 2025, the parties had briefed discretionary-denial issues, Samsung had made a *Sotera* stipulation, Cerence had not opposed institution on specific merits grounds, and the institution decision was pending. As noted below, similarly situated petitions filed just a few months earlier had already been instituted based on an identical stipulation.

Then, on February 28, 2025, the USPTO posted to its website a notice that it had "rescinded" the 2022 Guidance ("the Rescission"). Appx46. The Rescission offered no explanation for the dramatic change in the agency's approach and came without prior notice to the public or bar. The USPTO also de-designated as "binding," or even persuasive, "any" prior decisions of the Board or decisions on Director review "relying on" the 2022 Guidance. *Id.* Notably, the Rescission did explicitly refer parties to the *Fintiv* and *Sotera* decisions "for guidance." *Id.*

A month later, the USPTO issued a guidance memorandum (the 2025 Memo) about the Rescission. Appx48.[4] There, the Chief APJ clarified for the first time that the Rescission applied retroactively to any petition in which the Board had not yet issued an institution decision. Appx49. The 2025 Memo underscored that the effect of *Sotera* stipulations was significantly altered: where they were previously "dispositive," they were now merely "part of [the] holistic analysis" under the Rescission. Appx49-50.

---

[4] https://www.uspto.gov/sites/default/files/documents/ guidance_memo_on_interim_procedure_recission_20250324.pdf

The next day, the Acting Director issued a memorandum on "[i]nterim [p]rocesses" the agency would be using each time "the Director will exercise her discretion on institution of AIA proceedings." Appx51. The Acting Director did not cite the Rescission and did not explain her change to the *Sotera* standard.

As of filing this Petition, Petitioners have collectively received at least seventy Director decisions under that new discretionary denial process—of those, all but two were discretionary denials. Appx279.

### E. The Board denied institution based on the retroactivity of the Rescission and a new demand for petitioners to give up defenses beyond the scope of IPRs

**1.** Discretionary denial on *Fintiv* grounds was ruled out by the guidance and precedent in effect when the petition was filed and when Samsung made its *Sotera* stipulation. Indeed, the Board had instituted IPR on three petitions Google and Samsung filed two months earlier stemming from the same set of asserted patents. Samsung's *Sotera* stipulations were dispositive in each of those cases. *See Samsung Elecs. Co. v. Cerence Operating Co.*, IPR2024-00978, 2025 WL 495613, at *3 (P.T.A.B. Feb. 13, 2025); *Samsung Elecs. Co. v. Cerence Operating Co.*, IPR2024-00979, 2025 WL 355171, at *3

(P.T.A.B. Jan. 31, 2025); *Samsung Elecs. Co. v. Cerence Operating Co.*, IPR2024-01267, 2025 WL 355169, at *3 (P.T.A.B. Jan. 31, 2025).

The Rescission issued a few weeks after those institution decisions. Here, the Board permitted five pages of supplemental briefing for the parties to address discretionary denial under the Rescission. Appx270. Cerence argued that Samsung's *Sotera* stipulation giving up overlapping grounds was "no longer sufficient" and that any viable stipulation must give up *any art* from the IPR. Appx183-184. Although Cerence had complained of supposed overlap in art, Petitioners explained that Cerence was relying on early disclosures in the litigation made for preservation purposes under the local rules—not the *actual* issues for trial. Appx198. Furthermore, Petitioners explained that the IPR was Google's *only* current forum to litigate its invalidity challenge. Appx199.

**2.** The Board denied institution of the petitions challenging the '461 and '750 patents purely on *Fintiv* grounds. Appx8; *see also* Appx24. Most relevant here, the Board agreed with Cerence that the Rescission effectively nullified *Sotera* stipulations. Appx14-16. Not only that: they were no longer good even as one of many factors. *Id.* The USPTO's new position was that a petitioner may need to go further and give up grounds *involving* any art

raised in the IPR, even if such *grounds* could not be raised in the IPR because, for example, they were additionally premised on public use or sales. Appx15. According to the Board, such broader stipulations were necessary to ensure IPR was a "true alternative" to district-court litigation. *Id.*

**3.**     Google and Samsung requested Director review on grounds that the agency's non-institution decision was both *ultra vires* and impermissibly retroactive. Appx206-210.

Their review request explained that the Board's attempt to compel defendants to surrender defenses beyond the IPR estoppel statute was the kind of *ultra vires* "shenanigans" contemplated in *Cuozzo*. Appx206-207. Google and Samsung also explained that they had relied on the "binding" 2022 Guidance and that the agency's course-change without a reasoned explanation or consideration of reliance interests deprived them of due process. Appx209-210. The agency's new position under the Rescission required that a petitioner's stipulation go well beyond *Sotera* to have effect in the *Fintiv* analysis and must make IPRs a "true alternative" to district court proceedings, even though by statute they cannot be. Appx207.

In response, Cerence insisted the Rescission did not change any statute, regulation, or liability standard. Appx226-227. Cerence did not dispute

that the agency moved the goalposts for the kinds of stipulations that would suffice under *Fintiv*. Instead, it argued the Board had "recognized" that *Sotera* stipulations were "gamesmanship" because they did not foreclose using patents or printed publications in combinations based on system art that could not be raised in any IPR. Appx228-229.

The Acting Director summarily denied review in a single order addressing both petitions. Appx1-2.

## Legal Standard

This Court has jurisdiction to review any petition for a writ of mandamus challenging a denial of IPR institution. *Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1381 (Fed. Cir. 2021). A petitioner must show (1) "a clear and indisputable legal right," (2) that "it does not have any other adequate method of obtaining relief," and (3) that "the writ is appropriate under the circumstances." *Id.* at 1382.

## Why Mandamus Is Warranted

## I.    Petitioners' right to relief is clear and indisputable

"[J]udicial review is available in extraordinary circumstances by petition for mandamus" in cases of "decisions denying institution." *In re Palo Alto Networks, Inc.*, 44 F.4th 1369, 1374 (Fed. Cir. 2022) (citation omitted).

Extraordinary circumstances happened here because the USPTO made the Rescission retroactive without proper procedure and effectively expanded the IPR estoppel statute.

## A. *Mylan* does not bar mandamus

As a threshold matter, *Mylan* does not preclude writ relief here, notwithstanding the government's argument elsewhere that mandamus is limited to "colorable constitutional claims." *See* Acting Director's Response, *In re SAP Am., Inc.*, No. 25-132 (Fed. Cir. July 18, 2025) ("U.S. *SAP* Opp."), ECF No. 39 at 1, 11 (citation omitted). *Mylan*'s conclusion that "there is no reviewability of the Director's exercise of his discretion to deny institution except for colorable constitutional claims" refers to reviewing *unfettered* discretion—which was the case in the two cases *Mylan* relied on. 989 F.3d at 1382 (discussing *Webster v. Doe*, 486 U.S. 592, 603-04 (1988) ("absolute discretion"); *Woodward v. United States*, 871 F.2d 1068, 1072 (Fed. Cir. 1989) ("generally unfettered" discretion)). *Mylan* did not rule out review where discretion was fettered. *Mylan* also did not rule out challenges to the underlying rules—as necessarily recognized by this Court permitting a challenge to a discretionary-denial rule to proceed despite §314(d) in *Apple Inc. v. Vidal*, 63 F.4th 1, 14-15 (Fed. Cir. 2023). Petitioners' arguments are also different in

kind from *Mylan*'s.[5] Petitioners are not challenging the Acting Director's exercise of discretion she possessed, or the substance of her decision—Petitioners challenge the Rescission itself as a rule, and contend the Acting Director *purported* to have discretion she did not *actually* have—e.g., because it was unequivocally surrendered.

The challenge here turns on the Rescission's non-compliance with the APA, the statutory limits on the Director's authority, and the Constitution. This Court held in *Apple*, 63 F.4th at 14-15, that §314(d) does not insulate the agency from a challenge to its rules—including that it failed to follow required procedures under the APA. That was not a novel legal theory; the government's rescission of DACA was reviewable under the APA despite similar statutory provisions dictating unreviewability of removal orders. *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020). This Court has also confirmed

---

[5] Petitioners understand Mylan's argument regarding 35 U.S.C. §316(a)(2) to have been an allegation that *Fintiv* exceeded the USPTO's statutory authority, and not that it violated the APA by not providing notice and an opportunity to comment on *Fintiv's* precedential designation.

that reviewable "shenanigans" include "blatant violations of legal con-straints." *IGT v. Zynga Inc.*, No. 23-2262, 2025 WL 2045301, *6 (Fed. Cir. July 22, 2025) (precedential).

Finally, if this Court reads *Mylan* to categorically limit mandamus challenges from IPR petition denials to colorable constitutional challenges, that limitation is inconsistent with prior Supreme Court and Federal Circuit decisions. *See In re Power Integrations, Inc.*, 899 F.3d 1316, 1321 (Fed. Cir. 2018) (describing "circumstances described by the Supreme Court" in which challenges from institution denials could be justified, including "constitu-tional issues" and "actions by the agency beyond its statutory limits" (citing *Cuozzo*, 579 U.S. at 273-74; *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 370-71 (2018)); *Thryv, Inc. v. Click-to-Call Techs., LP*, 590 U.S. 45, 54 n.6 (2020) (leav-ing open possibility of mandamus in "extraordinary," not merely constitu-tional, case); *Deckers Corp. v. United States*, 752 F.3d 949, 965 (Fed. Cir. 2016) (explaining that panels are bound by prior panel decisions "until they are overruled by the court en banc or the Supreme Court").

## B. The USPTO violated the Constitution and the APA by retroactively making *Sotera* stipulations non-dispositive

Under "binding" guidance operating before the Rescission, Petitioners had a right for their petitions to proceed to an institution decision on the merits. The 2022 Guidance waived the Director's discretion to deny petitions on parallel-litigation grounds if the petitioner made a *Sotera* stipulation. Appx43-44**.** That is what Samsung did. Appx268-269.[6] Petitioners prepared and filed their IPR petitions, and Samsung offered that stipulation, in reliance on expectations established by the 2022 Guidance. The Rescission flipped those expectations without explanation and changed the result by rendering Samsung's *Sotera* stipulation not only non-dispositive but non-significant. Appx14-16. Retroactively applying the Rescission to this case violated Petitioners' procedural right to have institution considered on the merits (or to be precise, not be denied institution based on *Fintiv* when a *Sotera* stipulation is presented) in two ways: as a violation of due process and as a violation of the APA.

---

[6] Google was not a litigant and had nothing to stipulate to in litigation. *See also Samsung*, 2025 WL 495613, at *3 (explaining, instituting IPR weeks earlier, that "Google LLC's presence in this proceeding does not raise the concerns that a *Fintiv* analysis is designed to address").

### 1.    The agency violated Petitioners' due process rights

"[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). Here, the agency violated Petitioners' due process rights by retroactively applying the Rescission to their IPR petitions.

**a.** The 2022 Guidance created a protected interest for petitioners in reaching an institution decision on the merits when they made the stipulation based on the agency's having "restrict[ed] the exercise of official discretion." *Tarpeh-Doe v. United States*, 904 F.2d 719, 722-23 (D.C. Cir. 1990); *see Olim v. Wakinekona*, 461 U.S. 238, 249 (1983) (protected interest is created "by placing substantive limitations on official discretion").

Even where the government possesses significant discretion, a protectable interest exists if the government "plac[es] substantive limitations" on that discretion. *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 462 (1989) (citation omitted). For example, the government is given exceptional discretion in prison administration. But prison-created rules limiting that discretion have given incarcerated persons protected interests "in parole, in good-time credits, in freedom from involuntary transfer to a mental hospital, and

in freedom from more restrictive forms of confinement within a prison," to name a few. *Id.* at 461 (citations omitted). "[T]he most common manner" by which the government creates such an interest involves "establishing 'substantive predicates' to govern official decision-making and … by mandating the outcome to be reached upon a finding that the relevant criteria have been met." *Id.* at 462 (citation omitted).[7]

The 2022 Guidance did just that. It prohibited discretionary denial on *Fintiv* grounds so long as the petitioner made a *Sotera* stipulation. Appx43-44. The unequivocal command invoked the Director's "authority to issue binding agency guidance" governing the Board. Appx39. The 2022 Guidance thus "restrict[ed] the exercise of official discretion" with "'explicit mandatory language.'" *Tarpeh-Doe*, 904 F.2d at 722-23 (quoting *Thompson*, 490 U.S. at 463). That guidance dictated that the Board "will not" deny institution on *Fintiv* grounds if the petition was supported by a *Sotera* stipulation.

---

[7] The restriction-of-discretion standard is not confined to prison contexts; it is a general test. *See, e.g.*, *Wash. Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 36 (D.C. Cir. 1997) (housing benefits); *Laborde-Garcia v. Puerto Rico Tel. Co.*, 993 F.2d 265, 267 (1st Cir. 1993) (employment); *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1117 (10th Cir. 1991) (property rezoning).

Appx43-44. *See Thompson*, 490 U.S. at 463 (collecting cases holding that "shall" language limits discretion). Regardless of any flaws in the guidance's enactment, Petitioners were entitled to rely on it as an existing, and deemed "binding," agency rule.

That voluntary restriction of agency discretion gave *Sotera*-stipulating petitioners a "legitimate entitlement" to have their petitions considered on the merits. *See Tarpeh-Doe*, 904 F.2d at 722-23. It was a protected interest for due-process purposes. *See Thompson*, 490 U.S. at 463 ("use of 'explicitly mandatory language,' in connection with the establishment of 'specified substantive predicates' to limit discretion," created protected interest (citations omitted)); *Perry v. Sindermann*, 408 U.S. 593, 601 (1972) ("A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit."); *Furlong v. Shalala*, 156 F.3d 384, 395 (2d Cir. 1998) ("[P]roperty interests may be established through such diverse sources as unwritten common law and informal institutional policies and practices."). The Supreme Court has contrasted "completely unfettered" discretion, on the one hand, with expressly limited discretion as set out under the

2022 Guidance, on the other. *Thompson*, 490 U.S. at 462 (citation omitted) (collecting cases).

Petitioners also had a protected interest in the fees and costs they expended preparing and filing their petitions—including the IPR request fees, *see* 37 C.F.R. §42.15(a)(1)—under the reasonable expectation that pairing the IPR petitions with a *Sotera* stipulation would lead to a decision on the merits at institution under the agency's "binding" guidance. The agency collects the request fee for that very reason. There are two sets of fees paid to the USPTO upon filing an IPR petition: a non-refundable request fee and a post-institution fee that can be refunded if institution is denied. *See* 37 C.F.R. §§42.15(a)(1) (*Inter Partes* Review request fee ($23,750), 42.15(a)(2) (*Inter Partes* Review Post-Institution fee ($28,125)). The agency calculates those fees based on an estimate of the number of needed APJ hours. *See, e.g.*, *Rules for Practice for Trials Before the Patent Trial & Appeal Board*, 77 Fed. Reg. 6879, 6897 (Feb. 9, 2012) (estimating "98.7 hours of judge time" required for an IPR petition challenging up to 20 claims). After all, the statute requires a decision "in writing, of the Director's determination under subsection (a)," 35 U.S.C. § 314(c), and the only determination set forth in subsection (a) is the

"determin[ation] … [whether] there is a reasonable likelihood that the petitioner would prevail," *id.* §314(a). But none of that work took place because the Director denied the petitions without them ever getting to a panel of APJs. No such determination is being made under the Director's new procedures, despite the requisite fee paid for this review.

**b.** The agency's deprivation of those interests was procedurally inadequate. The Rescission included no justification for the about-face, the Acting Director solicited no input from the public, and Petitioners were caught unaware with no opportunity to conform their previously filed petitions to the new and radically different standard, or to instead choose not to expend the resources in preparing the petitions in the first place.

"To satisfy the Due Process Clause," an agency must "provide regulated parties fair warning of the conduct a regulation prohibits or requires." *Mexichem Fluor, Inc. v. EPA*, 866 F.3d 451, 462 (D.C. Cir. 2017) (citation omitted). The government failed to meet that standard because it drastically changed the effect of *Sotera* stipulations with no advance notice and no regard for established reliance interests, particularly those of parties like Petitioners who had *already* filed petitions under the suddenly rescinded 2022 Guidance.

Moreover, the agency deprived Petitioners of their request fee without the requisite process—consideration of the petitions on the merits for institution purposes. That was the required process because it was the premise of the agency's fee collection in the first place and the result Petitioners were told they could expect if they followed the "binding" 2022 Guidance.

The agency has argued that the Rescission was not retroactive because it was applied "only to cases in which a final decision on institution had not yet been made" and because the Board has allowed supplemental briefing in pending cases. *Motorola Sols, Inc. v. Stellar, LLC*, IPR2024-01284, 2025 WL 1503220, at *2 (P.T.A.B. May 23, 2025). But the retroactivity question is not whether the rule applied to *future decisions* but whether it applied to *past acts*—"whether the new provision attaches new legal consequences to events completed before its enactment." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269-70 (1994). Here, Samsung made a *Sotera* stipulation, developed its district-court positions, and prepared and filed their IPR petitions under the expectation that the rule in effect at the time would apply. Petitioners relied on the existing 2022 Guidance's assurances that Samsung's *Sotera* stipulation would foreclose discretionary denial on *Fintiv* grounds. In reliance on those assurances, Petitioners paid non-refundable request fees to the agency. Non-

litigant Google also jointly petitioned for IPR with litigant Samsung relying on the assurances that the co-pending litigation would not block the petitions on *Fintiv* grounds if a *Sotera* stipulation was made.

The Board permitted supplemental briefing at Cerence's request, but that was cold comfort because that briefing could not cure the due process problem. The agency did not provide notice and opportunity to comment on the promulgation of the retroactive Rescission itself. But regardless, the due-process issue was not lack of notice of and opportunity to address the applicability of the Rescission to institution—it was that Petitioners had no "reasonable opportunity … to conform to the changed requirements" because the USPTO applied a new set of criteria to *already set* facts.

### 2.    The agency violated the APA

Despite § 314(d), "[i]f a party believes the Patent Office has engaged in shenanigans by exceeding its statutory bounds, judicial review remains available consistent with the Administrative Procedure Act, which directs courts to set aside agency action not in accordance with law or in excess of statutory jurisdiction, authority, or limitations." *SAS*, 584 U.S. at 371 (cleaned up). Here, the agency violated the APA in three ways.

### a. The Rescission was a rule change effected without notice-and-comment rulemaking

The APA requires agencies to promulgate rules through notice and comment, aside from "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b). And the AIA required that the Director "shall prescribe" regulations governing IPR. 35 U.S.C. § 316(a). Agency action must be set aside if the agency failed to follow the APA's rulemaking requirements. *See, e.g.*, *Gen. Elec. Co. v. EPA*, 290 F.3d 377, 385 (D.C. Cir. 2002) (vacating EPA guidance document for failure to follow notice-and-comment procedures); *Coal. for Common Sense in Gov't Procurement v. Sec'y of Veterans Affs.*, 464 F.3d 1306, 1317 (Fed. Cir. 2006) (vacating VA's letter to industry for same reason). An agency's pronouncement is a substantive rule, subject to notice-and-comment requirements, if it "effect[s] a change in existing law or policy or … affect[s] individual rights and obligations." *Coal. for Common Sense*, 464 F.3d at 1317 (citation omitted).

The Rescission was a substantive rule. It both effected a change in existing law or policy and affected individual rights and obligations because it rescinded Petitioners' right to avoid *Fintiv*-based denial by making a *Sotera*

stipulation. Before the Rescission, *Sotera* stipulations triggered that right under a bright-line rule that the Director issued as "binding" agency policy. Appx39. The Rescission withdrew that right, and the agency has acknowledged that withdrawal resulted in a change in law or policy. Appx46; Appx48-50. Moreover, the Rescission altered the "substantive standards by which the USPTO evaluates" IPR petitions. *See In re Chestek PLLC*, 92 F.4th 1105, 1110 (Fed. Cir. 2024).

Accordingly, because the Rescission is invalid for failure of the agency to follow notice-and-comment rulemaking procedures, *see* 35 U.S.C. § 316(a); 5 U.S.C. §§ 553, 706(2)(D), the non-institution decision must be vacated.

The current chaos around discretionary denials underscores the need for notice-and-comment rulemaking in this area. The Acting Director is increasingly denying petitions in batches while making up previously unannounced standards along the way[8]—even applying new ones no one asked

---

[8] *See, e.g.*, Theresa Schliep, *With Discretionary Denials, PTAB Accepting Fewer Petitions*, Law360 (July 16, 2025), https://www.law360.com/ip/articles/2360783/ (institution rate has plummeted to 20% for the month of July); Ryan Davis, *PTAB Ramps Up Fintiv Denials After Withdrawal of Memo*, Law360 (May 13, 2025), https://www.law360.com/articles/2339744 (institution rate was between 58–68% before 2025, but fell to 44% in April). "On July 25, 2025, the FAQs were updated to add a new FAQ 10 under the

for.[9] That storm of unpredictability threatens the viability of the IPR system that Congress created: not only is the USPTO now denying an abundance of petitions *regardless of their merits*, but petitioners have no idea whether the agency will follow its own rules from one day (or administration) to the next. The whole point of notice-and-comment requirements is to ensure public participation, 5 U.S.C. § 553(c), and "fairness and deliberation," *United States v. Mead Corp.*, 533 U.S. 218, 230 (2001), in the rulemaking process—and to ensure agencies are transparent and "accountable to the public." *Regents*, 591 U.S. at 16 (citation omitted). Those concerns are especially keen here.

---

Procedures/processes tab," which explained the Office's view that the Director is not limited by the parties' arguments. *See* https://www.uspto.gov/patents/ptab/faqs/interim-processes-workload-management, *as archived at* https://perma.cc/2BDY-X2JL).

[9] *See, e.g.*, Anthony Insogna, *Acting Director Denies IPR Institution Based on "Settled Expectations*," PTAB Litig. Blog (July 8, 2025), https://www.ptablitigationblog.com/acting-director-denies-ipr-institution-based-on-settled-expectations/ (citing examples in which Director denied institution on grounds of "settled expectations" even though the petitioner did not raise that argument).

### b. Regardless of whether the Rescission was a rule or a policy change, its retroactive application violated the APA

Whether the Rescission is deemed a rule or a "statement[] of policy," 5 U.S.C. § 552(a)(2)(B), the agency violated the APA by applying it retroactively. That retroactive application was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id.* § 706(2)(A).

Policy statements "advise the public *prospectively* of the manner in which the agency proposes to exercise a discretionary power." *Lincoln v. Vigil*, 508 U.S. 182, 197 (1993) (citation omitted) (emphasis added). On the other hand, if the Rescission qualified as a rule—even assuming the lack of notice-and-comment rulemaking is not fatal in itself—rules "are presumed not to have retroactive effect," *Durr v. Nicholson*, 400 F.3d 1375, 1380 (Fed. Cir. 2005), and "will not be construed to have retroactive effect unless their language requires this result," *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). The USPTO rescinded the 2022 Guidance with a short statement stating only that it was rescinded; nothing in the Rescission requires retroactive application. Appx46. And while the USPTO's subsequent statements explained its intention to apply the Rescission retroactively, that does not flow from the Rescission's language. Further, the USPTO lacks "the

power to promulgate retroactive rules" because that power was not "conveyed by Congress in express terms." *Bowen*, 488 U.S. at 208.

The 2022 Guidance should therefore have applied to the petitions at issue here. *See Durr*, 400 F.3d at 1380 (error to apply procedural rule promulgated after filing but before decision). Cerence argued before the agency that applying the Rescission here would not be "retroactive" because Petitioners were permitted to address the guidance. Appx226. But that is wrong. The Rescission had retroactive effect here because it arose after Google and Samsung filed their petitions and Samsung made its *Sotera* stipulation. Petitioners acted in reliance on the 2022 Guidance, when it was still in effect. Under the 2022 Guidance, the agency surrendered any discretion to issue a *Fintiv* denial once Samsung made its *Sotera* stipulation.

### c. The agency also violated the APA under the change-in-position doctrine

The USPTO "told [petitioners] in guidance documents that it would do one thing" when it promised that it would not deny petitions on *Fintiv* grounds if accompanied by a *Sotera* stipulation, and it "then turned around and did something different" by issuing and applying the Rescission during the pendency of the IPR petitions. *See FDA v. Wages & White Lion Invs., L.L.C.*,

145 S. Ct. 898, 917 (2025). That violated the change-in-position doctrine, which prohibits an agency from changing policies without "provid[ing] a reasoned explanation for the change, display[ing] awareness that [it is] changing position, and consider[ing] serious reliance interests." *Id.* (cleaned up).

The change-in-position doctrine "asks two questions." *Id.* at 918. The first is whether the agency "changed existing policy." *Id.* The answer here is yes. The agency did so when it rescinded its prior mandatory policy of not denying institution based on parallel litigation if the petitioner made a *Sotera* stipulation. That was "inconsistent[] with an earlier position," a "reversal of its former views as to the proper course," and a "disavow[al] [of] prior inconsistent agency action as no longer good law." *Id.* (cleaned up). The agency has acknowledged its change repeatedly: it expressly "rescinded" the 2022 Guidance, Appx46; the 2025 Memo acknowledged that *Sotera* stipulations were no longer "dispositive," Appx49-50; and the Board has consistently described the Rescission as a "change of binding guidance," *see, e.g.*, *Dell Inc. v. Universal Connectivity Techs. Inc.*, IPR2024-01478, 2025 WL 1090038, at *1 (P.T.A.B. Apr. 7, 2025); *HP Inc. v. Universal Connectivity Techs. Inc.*, IPR2024-

01428, 2025 WL 1040187, at *1 (P.T.A.B. Apr. 8, 2025); *Nikon Corp. v. Optimum Imaging Techs., LLC*, IPR2024-01374, 2025 WL 1249839, at *3 (P.T.A.B. Apr. 29, 2025). Cerence described the agency's conduct the same way. Appx271 (citing "the changing circumstances for discretionary denial" based on the Rescission and the "shift" under it).

To be clear, the change-in-position doctrine would apply whether or not the 2022 Guidance or Rescission were in fact binding. It has applied "to an agency's divergence from a position articulated in nonbinding guidance documents" or "policy statement[s]." *Wages & White Lion*, 145 S. Ct. at 918 n.5. So while the express terms of the 2022 Guidance, Appx37-45, its apparent consistent application, and the later characterizations in the 2025 Memo, Appx48-50, all confirm that the agency considered its 2022 Guidance binding, the doctrine applies regardless of whether that is so.

The second question is whether the agency "display[ed] awareness that it [was] changing position" and offered "good reasons for the new policy." *Wages & White Lion*, 145 S. Ct. at 918 (citation omitted). And in "explaining its changed position, an agency must also be cognizant" of "serious reliance interests" related to its prior policy "that must be taken into ac-

count." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221-22 (2016) (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)). A "reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy." *Id.* (quoting *Fox*, 556 U.S. at 515-16).

The agency failed to do that here despite acknowledging the policy change. Appx46 ("rescind[ing]" the 2022 Guidance); Appx49-50 (acknowledging *Sotera* stipulations were no longer "dispositive"). The agency offered *no* explanation for the change—it merely announced its effect. *See* Appx46; Appx48-50. And there is nothing in the record suggesting the agency accounted for the serious reliance interests of parties like Samsung and Google here, who developed and coordinated district-court and IPR strategies based on the agency's promises. That failure to account for "significant reliance," *Encino*, 579 U.S. at 222; *Regents*, 591 U.S. at 30, is true both for the Rescission *and* the agency's unexplained decision to apply it retroactively. Appx48-50. That the agency "failed to address" reliance confirms that its actions were arbitrary and capricious. *Regents*, 591 U.S. at 30

## C. The USPTO's extra-statutory expansion of statutory IPR estoppel violates the Constitution's separation of powers

Under the Rescission, as clarified by additional pronouncements, petitioners must consider whether to surrender all *art*, not just *grounds*, involved in the IPR for a *Sotera* stipulation to have its desired effect. If the Board demanded petitioners give up challenges based on § 112 or § 101, that unquestionably would cross "outside its statutory limits," *Cuozzo*, 579 U.S. at 275, because IPRs are statutorily limited to novelty and obviousness grounds. It is no different for the Board to demand surrender of grounds involving system art as a condition for conducting an IPR because IPRs are statutorily limited to grounds based on patents and printed publications. For any petitioner who accedes to those demands, the result is *de facto* estoppel against raising any such invalidity grounds at all. The Board's newfound demands on petitioners thus expand the effective scope of estoppel beyond statutory bounds for the IPRs it institutes. That constitutes action "in excess of statutory jurisdiction, authority, or limitations" under the APA, 5 U.S.C. § 706, and a violation of the Constitution's separation of powers.

To the extent the Board considered Samsung's *Sotera* stipulation as part of a "holistic" analysis, it deemed the stipulation insufficient because

Samsung did not surrender grounds based on system art. Appx14-15. The Board acknowledged system art could never be raised in any IPR, but it nonetheless found the stipulation deficient because Samsung had preserved the right to cite some of the IPR art within system-art combinations. Appx15-16. The Board concluded IPR would thus not be a "true alternative" to litigation in this case, Appx15, even though *Sotera* held waiving *grounds* available in IPR was enough to make IPR a "true alternative." *Sotera*, 2020 WL 7049373, at *7. The Board also relied on *Motorola Solutions, Inc. v. Stellar, LLC*, IPR2024-01205, Paper 19, at 3-4 (P.T.A.B. Mar. 28, 2025) (mandamus petition pending, No. 25-134), which followed the Rescission and reflected the agency's newfound standard requiring more expansive stipulations. The Board's analysis made clear that petitioners hoping to file a stipulation with substantive effect in the *Fintiv* analysis now must give up their unpatentability challenges based on system-art combinations that *could not* have been raised in the IPR.[10] In such cases, when it institutes, the Board expands the effective scope of the IPR estoppel.

---

[10] *See, e.g.*, Denying Request for Discretionary Denial, *Tesla, Inc. v. Intell. Ventures II LLC*, IPR2025-00217, Paper 9, at 2 (P.T.A.B. June 13, 2025)

That brazen approach exceeds the scope of the IPR statute, arrogates authority reserved to Congress, and constitutes the kind of extra-statutory "shenanigans" contemplated by *Cuozzo*. 579 U.S. at 275. The scope of estoppel is limited to "ground[s] that the petitioner raised or reasonably *could have raised*" in the IPR. 35 U.S.C. §315(e)(2) (emphasis added). The Board disregarded Samsung's stipulation because it did not prevent some of the IPR *art* from being raised before the district court, but "a ground is not the prior art asserted during an IPR." *Ingenico Inc. v. IOENGINE, LLC*, 136 F.4th 1354, 1365 (Fed. Cir. 2025). Congress *could have* extended estoppel to all art in the IPR but did not. *Id.* at 1365-66. IPR estoppel does not preclude a petitioner from invalidity positions in district court that combine system art with patents and printed publications that were raised or could have been raised in other grounds in an IPR. *Id.* at 1366-67. Importing that requirement by coercion "renders superfluous" the limits in the IPR statute. *See Unwired Planet, LLC v. Google Inc.*, 841 F.3d 1376, 1382 (Fed. Cir. 2016).

---

(crediting "broad stipulation"); Opposition to Request for Discretionary Denial, *id.*, Paper 8, at 10–12 (stipulation disclaiming system art combined with any IPR art); *Tesla, Inc. v. United States*, IPR2025-00341, Paper 12 (P.T.A.B. June 13, 2025) (same).

The agency later suggested a *Sotera* stipulation "may not be particularly meaningful" if art from surrendered grounds remains available for invalidity combinations that could not have been raised via IPR, but that statement underscores the *ultra vires* nature of this new standard. Appx56. Congress already defined to what extent IPRs are an alternative to district-court litigation. And Congress chose not to extend estoppel to all *art* that was raised—or to grounds involving *system* art that cannot be raised in IPR at all.

Courts regularly declare unlawful agency actions that similarly conflict with congressional design. *See, e.g., Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 322-27 (2014) (agency's rule "would deal a severe blow to the Constitution's separation of powers" where it was "inconsistent with" the statutory structure and in excess of the statutory thresholds; statute defined numerical thresholds for regulatory review, and "[w]hen EPA replaced those numbers with others of its own choosing, it went well beyond the 'bounds of its statutory authority'" (citation omitted)); *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 462 (2002) (agency lacked authority "to develop new guidelines or to assign liability in a manner inconsistent with" an "unambiguous statute"); *City of Providence v. Barr*, 954 F.3d 23, 26, 45 (1st Cir. 2020) (holding it unlawful for agency to condition law-enforcement grants on additional terms

not included in statute); *see also Civil Aeronautics Bd. v. Delta Air Lines, Inc.*, 367 U.S. 316, 328 (1961) (questioning agency's "power to do indirectly what it cannot do directly"), *cited in SAS*, 584 U.S. at 368 n.\*. The Court should do the same here.

## II.     Petitioners have no other adequate means to obtain relief

Having exhausted administrative remedies, Petitioners have no other avenue to obtain relief. Precisely because "there is no adequate remedy by way of direct appeal of decisions denying institution," this Court has "conclude[d] that judicial review is available in extraordinary circumstances by petition for mandamus." *Palo Alto*, 44 F.4th at 1374 (alteration in original) (citation omitted). It would not afford meaningful relief to proceed against the agency in district court to challenge the Rescission under the APA; a district court's review of the lawfulness of the Rescission in the abstract would not provide any relief with respect to the specific IPR petitions here.

## III.    Mandamus relief is appropriate under the circumstances

"[W]hen the Board denies institution, [this Court's] mandamus jurisdiction is especially important" because a decision denying institution "defeats [the Court's] prospective jurisdiction." *Mylan*, 989 F.3d at 1380 (cita-

tion omitted); *see* 28 U.S.C. §1651(a). Because of the unpredictability and significant effect of the Director's new approach, mandamus is especially appropriate here.

AIA trial practice is in a tumult. There are "unsettled" but "fundamental" legal issues at play. *In re Google LLC*, 949 F.3d 1338, 1341-42 (Fed. Cir. 2020) (citation omitted). And there is a pressing need to resolve those issues. The Acting Director has been denying a flood of petitions in batches and creating new rules along the way such that the need for notice-and-comment rulemaking and predictability is more acute than it has been at any time since the *Fintiv* rule came out. As the rate of discretionary denials balloons, unreliable and rapidly shifting IPR institution standards threaten to effectively kneecap the statutory IPR process. Yet because of their nature and the unavailability of direct appeal, "it is unlikely that … these issues will be preserved and presented to this court through the regular appellate process." *Id.* at 1342. Mandamus is appropriate to resolve "substantial uncertainty and confusion" about the state of discretionary denial. *In re MSTG, Inc.*, 675 F.3d 1337, 1342 (Fed. Cir. 2012) (citation omitted).

Furthermore, IPR petitions cost hundreds of thousands of dollars in agency, legal, and expert fees to prepare and file,[11] and "the substantial expense to the parties that would result from" an unlawful approach by the agency also "confirms" the need for review now. *Google*, 949 F.3d at 1342-43. Mandamus is thus appropriate to ensure that parties who relied on agency guidance deemed "binding" are not penalized.

Finally, discretionary denial is relevant only to petitions where there is a reasonable likelihood the petitioner will prevail on at least one challenged claim. Br. of *Amicus Curiae* CCIA at 20-21, *In re Motorola Sols., Inc.*, No. 25-134 (Fed. Cir. June 27, 2025), ECF No. 15-2. Mandamus is appropriate because permitting an unlawful framework to insulate invalid claims "would undermine the claimed important public interests," *MSTG*, 675 F.3d at 1342, in AIA proceedings. *See* Br. of *Amicus Curiae* Public Interest Pat. Law Inst. at 10-13, *In re SAP Am., Inc.*, No. 25-132 (Fed. Cir. June 20, 2025), ECF No. 13 (detailing public interest).

---

[11] *See, e.g.*, Br. of Dell Inc. et al. as *Amici Curiae*, *Cuozzo Speed Techs., LLC v. Lee*, No. 15-446, 2016 WL 1319652, at *23 (U.S. Mar. 30, 2016); 37 C.F.R. §42.15(a).

**Conclusion**

The Court should direct the USPTO to apply the discretionary-denial guidance in place when the IPR petitions were filed.

Respectfully submitted,

PERKINS COIE LLP

/s/Nathan K. Kelley
Nathan K. Kelley

*Counsel for Petitioner Google LLC*

ARNOLD & PORTER KAY SCHOLER LLP

/s/Ali R. Sharifahmadian
Ali R. Sharifahmadian

*Counsel for Petitioners Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc.*

**Certificate of Compliance with Type–Volume Limitation**

This petition complies with the relevant type–volume limitations of the Federal Rules of Appellate Procedure and the Federal Circuit Rules because it has been prepared using a proportionally spaced 14-point typeface and includes 7,792 words, excluding the portions exempted by rule.

Dated: August 18, 2025        /s/Nathan K. Kelley

                                   Nathan K. Kelley

**Certificate of Authority**

I certify that I have the authority of Ali R. Sharifahmadian to file this document with his electronic signature.

Dated: August 18, 2025        /s/Nathan K. Kelley

                                   Nathan K. Kelley

**Proof of Service**

I certify that on August 18, 2025, I caused a paper copy of this document (and the attached appendix, entries of appearance, certificates of interest, and notices of related cases) to be sent by express carrier to lead counsel for respondent Cerence Operating Co. at the following address:

Qi (Peter) Tong
Russ August & Kabat
8080 N. Central Expy, Suite 1503
Dallas, TX 75206
(310) 826-7474

I further certify that I caused courtesy electronic copies of this document (and the attached appendix, entries of appearance, certificates of interest, and notices of related cases) to be sent to Qi (Peter) Tong at ptong@raklaw.com and to the following additional counsel of record for respondent:

Neil A. Rubin (nrubin@raklaw.com);
Benjamin T. Wang (bwang@raklaw.com);
Andrew D. Weiss (aweiss@raklaw.com);
James S. Tsuei (jstuei@raklaw.com); and
Bradley Hyde (bhyde@raklaw.com).

I further certify that I caused an electronic copy of this document (and the attached appendix, entries of appearance, certificates of interest, and notices of related cases) to be sent to efileSO@uspto.gov and a paper

copy of this document to be sent by an express carrier to the following address:

> Office of the Solicitor
> United States Patent and Trademark Office
> Mail Stop 8
> P.O. Box 1450
> Alexandria, VA 22313-1450

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: August 18, 2025          /s/Nathan K. Kelley
                                Nathan K. Kelley