**No. 25-144**

United States Court of Appeals
for the Federal Circuit

_____

In re Google, LLC, Samsung Electronics Co., Ltd., and Samsung
Electronics America, Inc.
*Petitioners*


_____


On Petion for a Writ of Mandamus to the United States Patent and
Trademark Office in IPR2024-01465 & IPR2024-01464

**MOTION OF US\*MADE, THE NATIONAL RETAIL FEDERATION,
THE HIGH TECH INVENTORS ALLIANCE, ACT|THE APP
ASSOCIATION, THE ALLIANCE FOR AUTOMOTIVE
INNOVATION, AND THE COMPUTER & COMMUNICATIONS
INDUSTRY ASSOCIATION
FOR LEAVE TO FILE AS AMICI CURIAE**

Joseph Matal
Clear IP, LLC
888 16th St., NW
Suite 300
Washington, DC 20006
(202) 654-4500
Joseph.Matal@clearpatents.com

*Counsel for Amici Curiae*

August 22, 2025

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 29(a) and 47.4, counsel for amici certifies that:

1.  The full names of the parties that I represent are US*MADE, the National Retail Federation, the High Tech Inventors Alliance, ACT|The App Association, the Alliance for Automotive Innovation, and the Computer & Communications Industry Association

2.  There are no real parties in interest of parties that I represent

3.  There are no parent corporations or publicly held companies that own ten percent or more of the stock of the parties that I represent

4.  No other law firms, partners, or associates who have not entered an appearance in this appeal either appeared for the parties that I represent in the originating court or are expected to so appear in this Court

5.  I do not know of any case in this or any other court or agency that will directly affect or be directly affected by this Court's decision in this case

6.  No disclosure regarding organizational victims in criminal cases or debtors or trustees in bankruptcy cases is required under Fed. R. App. P. 26.1(b) or (c).

August 22, 2025                                    */s/ Joseph Matal*

## MOTION FOR LEAVE TO FILE

All parties have consented to the filing of amici's brief.

The U.S. Manufacturers Association for Development and Enterprise is a nonprofit association representing companies manufacturing diverse goods in the United States.

The National Retail Federation is the world's largest retail trade association.

The Alliance for Automotive Innovation represents the full automotive industry, including the manufacturers producing most vehicles sold in the U.S. and equipment suppliers.

The High Tech Inventors Alliance represents leading technology providers and includes some of the most innovative companies in the world.

ACT | The App Association is a global policy trade association that represents entrepreneurs, innovators, and independent developers within the app ecosystem that engages with verticals across every industry.

The Computer & Communications Industry Association is an international, not-for-profit trade association representing a broad cross section of communications and technology firms.

While amici's members have collectively received hundreds of thousands of patents to undergird their innovative enterprises, they have also been the targets of abusive patent litigation.

Amici believe that their brief may aid the Court in deciding the petition for mandamus relief. The brief discusses the limits on agency rulemaking authority, the due process limits on retroactive imposition of procedural bars on appeals for relief, and whether the decision to initiate a patent validity review under the America Invents Act is a type of administrative decision that is absolutely or inherently discretionary and insusceptible to legal constraints.

Amici respectfully request this Court's leave to file the accompanying amicus brief.

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel for amici curiae certifies that this brief:

(1)     complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 250 words, including footnotes and excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b); and

(2)     complies with the typeface and style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because this document has been prepared using Microsoft Office Word and is set in the Bookman Old Style font in a size equivalent to 14 points or larger.


Dated:  August 22, 2025                    */s/ Joseph Matal*

**No. 25-144**

United States Court of Appeals
for the Federal Circuit

In re Google, LLC, Samsung Electronics Co., Ltd., and Samsung
Electronics America, Inc.
*Petitioners*

On Petion for a Writ of Mandamus to the United States Patent and
Trademark Office in IPR2024-01465 & IPR2024-01464

**BRIEF OF US\*MADE, THE NATIONAL RETAIL FEDERATION,
THE HIGH TECH INVENTORS ALLIANCE, ACT|THE APP
ASSOCIATION, THE ALLIANCE FOR AUTOMOTIVE
INNOVATION, AND THE COMPUTER & COMMUNICATIONS
INDUSTRY ASSOCIATION IN SUPPORT OF GOOGLE,
SAMSUNG, AND THE PETITION FOR RELIEF**

Joseph Matal
CLEAR IP, LLC
888 16th St., NW
Suite 300
Washington, DC 20006
(202) 654-4500
Joseph.Matal@clearpatents.com

*Counsel for Amici Curiae*

August 22, 2025

**CERTIFICATE OF INTEREST**

Pursuant to Federal Circuit Rules 29(a) and 47.4, counsel for amici certifies that:

7.    The full names of the parties that I represent are US*MADE, the National Retail Federation, the High Tech Inventors Alliance, ACT|The App Association, the Alliance for Automotive Innovation, and the Computer & Communications Industry Association

8.    There are no real parties in interest of parties that I represent

9.    There are no parent corporations or publicly held companies that own ten percent or more of the stock of the parties that I represent

10.    No other law firms, partners, or associates who have not entered an appearance in this appeal either appeared for the parties that I represent in the originating court or are expected to so appear in this Court

11.    I do not know of any case in this or any other court or agency that will directly affect or be directly affected by this Court's decision in this case

12.    No disclosure regarding organizational victims in criminal cases or debtors or trustees in bankruptcy cases is required under Fed. R. App. P. 26.1(b) or (c).

August 22, 2025                                         */s/ Joseph Matal*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................... ii

INTEREST OF AMICI CURIAE ..................................................... v

A NOTE ON BRIEFING ............................................................. 1

ARGUMENT ......................................................................... 2

   I.   It is clear and indisputable that an administrative agency such as the USPTO cannot apply new rules retroactively. ..... 2

   II.  It is clear and indisputable that the USPTO's elimination of the *Fintiv* safe harbors is being applied retroactively—and is unconstitutional. ............................................................. 5

   III.  PTAB institution decisions are not "absolutely" discretionary—they are governed by law and due process constraints. ..................................................................... 12

CONCLUSION ........................................................................ 19

# TABLE OF AUTHORITIES

## *Cases*

*Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33 (1980)...................17

*Apple Inc. v. Vidal*, 63 F.4th 1 (Fed. Cir. 2023) ..............................19

*Block v. North Dakota ex rel. Bd. of University and School Lands*, 461 U.S. 273 (1983)...............................................................11, 12

*Board of County Commissioners of Weld County, Colorado v. EPA*, 72 F.4th 284 (D.C. Cir. 2023).......................................................... 5

*Bowen v. Georgetown University Hosp.*, 488 U.S. 204 (1988).......... 2

*Brown v. Angelone*, 150 F.3d 370 (4th Cir. 1998)..........................12

*Chenault v. U.S. Postal Service*, 37 F.3d 535 (9th Cir. 1994) ..........12

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) .................................................................................................13

*Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261 (2016) ................... 9

*Durr v. Nicholson*, 400 F.3d 1375 (Fed. Cir. 2005) ......................... 3

*Facebook, Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321 (Fed. Cir. 2020) ..............................................................................18

*Heckler v. Chaney*, 470 U.S. 821 (1985)......................................17

*IGT v. Zynga Inc.*, 144 F.4th 1357 (Fed. Cir. 2025) ......................19

*In re Apex Exp. Corp.*, 190 F.3d 624 (4th Cir. 1999) .....................12

*Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994).....................2, 11

*Lincoln v. Vigil*, 508 U.S. 182 (1993) .......................................13, 16

*Miller v. Florida*, 482 U.S. 423 (1987)..........................................10

*PHH Corp. v. CFPB*, 839 F.3d 1 (D.C. Cir. 2016).......................3, 10

*Ross v. Artuz*, 150 F.3d 97 (2nd Cir. 1998) ..............................11, 12

ii

*SAS Institute, Inc. v. Iancu*, 584 U.S. 357 (2018)............................18

*Satellite Broadcasting Co., Inc. v. FCC*, 824 F.2d 1 (D.C. Cir. 1987)  3

*Steven I. v. Central Bucks School Dist.*, 618 F.3d 411 (3rd Cir. 2010) .................................................................................12

*Stolz v. FCC*, 882 F.3d 234 (D.C. Cir. 2018) ................................... 4

*Texaco, Inc. v. Short*, 454 U.S. 516 (1982) ....................................11

*Thryv, Inc v. Click-To-Call Techs., LP*, 590 U.S. 45 (2020)................ 9

*Uniloc 2017 LLC v. Facebook Inc.*, 989 F.3d 1018 (Fed. Cir. 2021) .18

*Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10 (Fed. Cir. 2012)................................................................................11

*Will v. Calvert Fire Ins. Co.*, 437 U.S. 655 (1978) ...........................18

### Statutes and Regulations

35 U.S.C. § 314(a)................................................................14, 15

35 U.S.C. § 315(a)....................................................................14

35 U.S.C. § 315(b)....................................................................14

35 U.S.C. § 315(c)....................................................................15

35 U.S.C. § 315(e)....................................................................14

35 U.S.C. § 325(d)....................................................................14

### PTAB Decisions

*Apple Inc. v. Seven Networks, LLC*, IPR2020-00156 (Jun. 15, 2020) 6

*Sotera Wireless, Inc. v. Masimo Corp.*, IPR2020-01019 (Dec. 1, 2020) ..................................................................................... 6

### Legislative Materials

157 Cong. Rec. S5429 (daily ed. Sep. 8, 2011)................................ 7

H.R. Rep. No. 96-1307, 96th Cong. (1980)..................................... 8

Weekly Compilation of Presidential Documents, President Jimmy Carter, Dec. 12, 1980, Vol. 16, No. 50 ......................................... 9

### *Other Authorities*

USPTO Brief in No. 25-134 ....................................................... 13, 17

Retired Officials Brief in No. 25-132 ...................................... 15, 16

USPTO, Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings With Parallel District Court Litigation, Jun. 21, 2022 .......................................................................................... 6

# INTEREST OF AMICI CURIAE

The U.S. Manufacturers Association for Development and Enterprise is a nonprofit association representing companies manufacturing diverse goods in the United States.

The National Retail Federation is the world's largest retail trade association.

The Alliance for Automotive Innovation represents the full automotive industry, including the manufacturers producing most vehicles sold in the U.S. and equipment suppliers.

The High Tech Inventors Alliance represents leading technology providers and includes some of the most innovative companies in the world.

ACT | The App Association is a global policy trade association that represents entrepreneurs, innovators, and independent developers within the app ecosystem that engages with verticals across every industry.

The Computer & Communications Industry Association is an international, not-for-profit trade association representing a broad cross section of communications and technology firms.[1]

---

[1] No counsel for any party wrote any part of this brief. No party other than amici curiae's members contributed money that was intended to fund the preparation or submission of this brief. (Although

petitioners are variously members of US*MADE, CCIA, and HTIA, none of them participated in the decision to file or the preparation of this brief or provided funding intended for this brief.)  This brief is accompanied by a motion seeking leave to file.

# A NOTE ON BRIEFING

Amici have also filed briefs in *In re SAP, Inc.*, No. 25-132, and in *In re Motorola Solutions, Inc.*, No. 25-134. The first two sections of the present brief are substantially the same as the brief that amici filed in these two other cases. The third section of this brief addresses the USPTO's arguments that PTAB institution decisions are a type of administrative decision that is absolutely and inherently discretionary and thus incapable of being governed by legal standards. (The third section of amici's *SAP* brief describes other retroactive rules that USPTO has adopted in recent months. The third section of amici's *Motorola Solutions* brief addresses the rulemaking requirements of the Administrative Procedure Act.)

\*     \*     \*     \*

Amici note that, in the seven weeks since amici filed their brief in *In re Motorola Solutions*, the USPTO has issued **98** additional retroactive *Fintiv* denials of IPR petitions that were backed by a *Sotera* stipulation—and thus would not have been denied under the rules in place when the petitions were filed. *See infra* p. 7.

**ARGUMENT**

## I. It is clear and indisputable that an administrative agency such as the USPTO cannot apply new rules retroactively.

"Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). "In a free, dynamic society, creativity in both commercial and artistic endeavors is fostered by a rule of law that gives people confidence about the legal consequences of their actions." *Id.* at 266.

Limits on retroactive rulemaking apply with special force to executive agencies. "It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 208 (1988). For this reason, "a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in *express terms*." *Id.* (emphasis added).

Relatedly, "traditional concepts of due process incorporated into administrative law preclude an agency from penalizing a

private party for violating a rule without first providing adequate notice of the substance of the rule." *Satellite Broadcasting Co., Inc. v. FCC*, 824 F.2d 1, 3 (D.C. Cir. 1987). "The Due Process Clause limits the extent to which the Government may retroactively alter the legal consequences of an entity's or person's past conduct." *PHH Corp. v. CFPB*, 839 F.3d 1, 41 (D.C. Cir. 2016), *reinstated in relevant part and reversed on other grounds*, 881 F.3d 75 (D.C. Cir. 2018) (en banc). "Due process therefore requires agencies to 'provide regulated parties fair warning of the conduct a regulation prohibits or requires.'" *Id.* at 46 (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012)).

This Court has applied these principles to invalidate an agency's attempt to retroactively apply new rules governing appeals before the agency. In *Durr v. Nicholson*, 400 F.3d 1375 (Fed. Cir. 2005), a veteran had sought to appeal the denial of his benefit claim to the Court of Appeals for Veterans Claims ("Veterans' Court"). The Veterans' Court "dismissed his appeal for failure to file a timely notice of appeal." *Id.* at 1377. As this Court noted, between the time when the veteran had filed his notice of appeal and when the Veterans' Court dismissed the appeal, the Veterans' Court changed its rules to "impose[] new requirements." *Id.* at 1379. The

Veterans' Court applied this new rule retroactively to bar the veteran's appeal. *See id.* at 1378.

This Court reversed. It applied the principle that an agency cannot "promulgate retroactive rules unless that power is conveyed by Congress in express terms." *Id.* at 1380 (quoting *Bowen*, 488 U.S. at 208). The Court concluded that the Veterans' Court's "statutory grant of rulemaking authority does not contain any authorization for retroactive rulemaking." *Id.* It then held that applying the new rule "would have an impermissible retroactive effect if it would render invalid a notice that was valid when filed." *Id.*

The D.C. Circuit enforces the same bar on retroactive rulemaking. *Stolz v. FCC*, 882 F.3d 234 (D.C. Cir. 2018), holds that an agency must give fair notice of a new procedural rule before it can apply that rule to limit the arguments that a party can make in an application for review of the agency's actions. The review applicant in *Stolz* had sought to raise a new argument in a motion for reconsideration. *See id.* at 239. The FCC concluded that the argument was procedurally barred because it was not raised in a supplemental filing. *See id.*

The D.C. Circuit overturned the agency's application of this new procedural bar. It found that "[nothing] in the FCC's procedural regulations put claimants on fair notice that failure to file a nowhere-mentioned-in-the-rules supplemental documents will procedurally forfeit a claim." *Id.* The court held that "[i]f an agency wants a procedural requirement to have the type of claim-foreclosing consequence the FCC attached here, it needs to be explicit about the rule and upfront about consequences of noncompliance." *Id.*; *see also Board of County Commissioners of Weld County, Colorado v. EPA*, 72 F.4th 284, 293 (D.C. Cir. 2023) ("We have made clear that because EPA lacks statutory authority to promulgate retroactive rules, it cannot impose on States new obligations with compliance deadlines already in the past.").

## II. It is clear and indisputable that the USPTO's elimination of the *Fintiv* safe harbors is being applied retroactively—and is unconstitutional.

By weighing an early trial date and progress in copending civil litigation against instituting review, the USPTO's *Fintiv* rule effectively imposes a shorter deadline for filing an IPR petition than the one-year deadline prescribed by 35 U.S.C. § 315(b)—in the USPTO's words, it "may require petitioners to act more quickly than

the maximum amount of time permitted by Congress." *Apple Inc. v. Seven Networks, LLC*, IPR2020-00156 (Jun. 15, 2020).

The rule that the USPTO adopted on June 21, 2022 ("the Vidal memo"),[2] created two safe harbors from this procedural bar: no *Fintiv* discretionary denial would be applied if the petitioner made a *Sotera* stipulation[3] not to raise prior art in district court that it reasonably could have raised in the IPR, and no bar would be applied if the petition presented "compelling merits" of invalidity.

In amici's experience, the Vidal memo was heavily relied on by petitioners—it brought much needed predictability to PTAB practice and afforded them time to draft a proper petition. For the very reasons why Congress set the statutory deadline at one year, petitioners often need more time to prepare a petition than what *Fintiv* allows: they need time to conduct a thorough prior art search and to learn which claims are being asserted in litigation.[4] Under

---

[2] *See* USPTO, Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings With Parallel District Court Litigation, Jun. 21, 2022, *available at* https://tinyurl.com/2zj76t6n.

[3] *See Sotera Wireless, Inc. v. Masimo Corp.*, IPR2020-01019 (Dec. 1, 2020) (precedential decision).

[4] *See* 157 Cong. Rec. S5429 (daily ed. Sep. 8, 2011) (noting that Congress concluded that it was "appropriate to extend the section 315(b) deadline to one year" in order to "afford defendants a

the Vidal memo, by relying on the *Sotera* safe harbor, a petitioner could use its full statutory filing period and prepare a strong and targeted petition—and many did so.

The USPTO's February 28, 2025, rule change pulled the rug out from under all the petitioners who relied on the Vidal memo. Indeed, not only is a *Sotera* stipulation no longer a safe harbor; under the USPTO's new rule, a *Sotera* stipulation is almost worthless in overcoming an early trial date. The new rule was first applied by the Director in a set of decisions entered on March 28, 2025, and PTAB panels began applying the rule on April 4, 2025. Since then, by amici's count, at least **172** *inter partes* review petitions have been procedurally barred under *Fintiv* despite the petitioner's entry of a *Sotera* stipulation.[5]

Every single one of these petitions was filed in 2024 or early 2025, before the petitioners could possibly have known about the USPTO's February 28, 2025, rule change. Every single one was an

_____

reasonable opportunity to identify and understand the patent claims that are relevant to the litigation" and "in light of the present bill's enhanced estoppels").

[5] *See* Addendum to this brief. Of these 172 petitions, 149 were were *Fintiv*-barred because of copending litigation in the Eastern District of Texas.

important part of the petitioner's invalidity defense and cost over $100,000 to prepare and file. Every single one of these petitions would have been immune from a *Fintiv* bar under the rules in place when the petition was filed. And every single one of these petitions has now been denied because of the February 28, 2025, rule change.

These retroactive procedural denials are deeply prejudicial to petitioners. The PTAB is the only adversarial forum for reviewing patent validity that is staffed by technical experts. It was Congress itself that determined that district courts are insufficient for addressing the difficult scientific questions that often arise in patent cases. Although civil litigation over patent validity has always been available, since 1980, Congress has authorized—and repeatedly reenacted and refined—post-issuance review at the USPTO.[6] The proceedings serve the "important congressional

---

[6] *See* H.R. Rep. No. 96-1307, 96th Cong., at 4 (1980) (emphasizing the need "to have the validity of patents tested in the Patent office where the most expert opinions exist and at a much reduced cost") (report to accompany H.R. 6933, authorizing reexamination of patents); Weekly Compilation of Presidential Documents, President Jimmy Carter, Dec. 12, 1980, Vol. 16, No. 50 (Statement on Signing H.R. 6933 into Law) ("Patent reexamination will . . . . will improve the reliability of reexamined patents, thereby reducing the costs and uncertainties of testing patent validity in the courts.").

objective" of applying the USPTO's expertise to "revisit and revise earlier patent grants," *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 272 (2016), thereby addressing "overpatenting and its diminishment of competition." *Thryv, Inc v. Click-To-Call Techs., LP*, 590 U.S. 45, 54 (2020). Congress decided that American businesses have a legitimate interest in operating freely from the assertion of invalid patents—and that PTAB proceedings are necessary to protect that interest.

This legislative judgment conforms with amici's experience: the PTAB is not simply another venue for litigating patents—the proceedings are different in kind, providing a markedly more reliable and accurate form of patent validity review.

The USPTO's retroactive repeal of access to PTAB proceedings is exactly the type of administrative action that the D.C. Circuit has condemned: "When a government agency officially and expressly tells you that you are legally allowed to do something," *PPH Corp.*, 839 F.3d at 47, "but later tells you 'just kidding' and enforces the law retroactively against you and sanctions you for actions you took in reliance on the government's assurances, that amounts to a serious due process violation." *Id.* Amici, relying on the dispositive nature of their *Sotera* stipulations, took the time to prepare

persuasive IPR petitions, only to be told "just kidding" after the petitions were filed.

There can be no doubt that the USPTO's new *Fintiv* rule is being applied retroactively—and constitutes a due process violation. "A law is retrospective if it changes the legal consequences of acts completed before its effective date." *Miller v. Florida*, 482 U.S. 423, 430 (1987) (citation omitted). The February 28, 2025, action plainly changes the "legal consequences" of relying on a *Sotera* stipulation—it converts it from an absolute safe harbor from the *Fintiv* procedural bar to a virtual irrelevancy, something that petitioners could not have known when they filed their petitions.

Although some procedural rules can be applied to pending cases without violating due process, deadlines and related procedural bars are different. As *Landgraf* itself noted, "[a] new rule concerning the filing of complaints would not govern an action in which the complaint had already been properly filed under the old regime." *Landgraf*, 511 U.S. at 275 n. 29; *see also Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 31 n. 14 (Fed. Cir. 2012) (declining to apply on appeal a "new rule of evidence [that was announced] after trial.") (citing *Landgraf*, 511 U.S. at 275 n. 29).

The key distinction for constitutional purposes is whether application of a new procedural bar to pending cases still affords parties a reasonable opportunity to comply with the rule. As the Supreme Court has emphasized, "[t]he Constitution . . . requires that statutes of limitations must allow a reasonable time after they take effect for the commencement of suits upon existing causes of action." *Block v. North Dakota ex rel. Bd. of University and School Lands*, 461 U.S. 273, 286 n. 23 (1983) (citations omitted). "[S]tatutes of limitation affecting existing rights are not unconstitutional, if a reasonable time is given for the commencement of an action before the bar takes effect." *Texaco, Inc. v. Short*, 454 U.S. 516, 527 n. 21 (1982) (quoting *Terry v. Anderson*, 95 U.S. 628, 632 (1877)).[7]

---

[7] *See also Ross v. Artuz*, 150 F.3d 97, 100 (2nd Cir. 1998) ("[Even] where it is clear that Congress intended to foreclose suits on certain claims, the Constitution requires that statutes of limitations must allow a reasonable time after they take effect for the commencement of suits upon existing causes of action.") (citations and quotations omitted); *In re Apex Exp. Corp.*, 190 F.3d 624, 642 (4th Cir. 1999) (noting "the constitutional concerns that would be associated with a retroactive reduction in the statute of limitations."); *Steven I. v. Central Bucks School Dist.*, 618 F.3d 411, 414-15 (3rd Cir. 2010); *Chenault v. U.S. Postal Service*, 37 F.3d 535, 539 (9th Cir. 1994).

Notably, this constitutional limitation on retroactive rulemaking applies even to *legislative* rulemaking. Even "[t]he *legislature* cannot extinguish an existing cause of action by enacting a new limitation period without first providing a reasonable time after the effective date of the new limitation period in which to initiate the action." *Brown v. Angelone*, 150 F.3d 370, 373 (4th Cir. 1998) (emphasis added); *see also Block*, 461 U.S. at 286 n. 23 (discussing congressional legislation); *Ross v. Artuz*, 150 F.3d at 100 (same).

Congress and the state legislatures do have some power to enact retroactive rules—within constitutional limits. But an administrative agency has no power to apply rules retroactively *at all* (absent express authorization from Congress, which the USPTO conspicuously lacks). This Court need not identify the limits on *congressional* power to retroactively change procedural bars in order to conclude that the USPTO's foray into retroactive rulemaking is illegal *ab initio*.

### III. PTAB institution decisions are not "absolutely" discretionary—they are governed by law and due process constraints.

In its response in *Motorola Solutions*, the USPTO contends that the decision whether to institute a PTAB proceeding is "entirely" or

"purely" discretionary.  Brief in No. 25-134 at 23, 35.  The agency analogizes institution to other types of executive or judicial decisions that the courts have determined are inherently unreviewable.  *See id.* at 22 n. 3.

The Supreme Court has held that when "statutes are drawn in such broad terms that in a given case there is no law to apply," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (citation omitted), "the statute can be taken to have committed the decisionmaking to agency's judgement *absolutely*." *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993) (emphasis added, citations omitted).  The Court has also identified "certain categories of administrative decisions that courts traditionally have regarded as [being] committed to agency discretion" and therefore unreviewable. *Id.*

The USPTO's decision whether to initiate a validity review of a patent under the America Invents Act is not remotely analogous to these types of decisions.

*1.*    Unlike statutes that provide "no meaningful standard" for regulating agency discretion, *Lincoln v Vigil*, 508 U.S. at 191, the AIA expressly and extensively dictates the conditions for instituting PTAB review.  The statute sets an elevated "reasonable likelihood"

threshold for institution, *see* 35 U.S.C. § 314(a); sets time limits and other procedural bars in relation to district court litigation, *see id.* § 315(a), (b); estops repeated challenges to a patent by a party, *see id.* § 315(e); allows the agency to bar challenges based on prior art or arguments that it previously considered, *see id.* § 325(d); and extends these procedural bars to real parties in interest and parties in privity with the petitioner. *See id.* § 315(a), (b), and (e).

This is not a statute that provides "no law to apply"—or that evinces a legislative intent to make institution solely a matter of the Director's whim. The only logical conclusion to be drawn from Congress's enactment of the AIA's statutory institution requirements is that Congress intended for the agency to follow those requirements.

The USPTO nevertheless contends that institution is "entirely discretionary"—indeed, its supporting amici assert that "Congress *expressly* granted discretion in institution decisions." Retired Officials Brief in No. 25-132 at 4 (emphasis added).

To be clear, § 314, which is titled "Institution of inter partes review," does not use the word "discretion."[8] The USPTO contends that unlimited discretion nevertheless flows from the statute because its merits-threshold requirement is stated in the negative: "The Director may not authorize an inter partes review to be instituted *unless* . . . there is a reasonable likelihood [of invalidity]." 35 U.S.C. § 314(a) (emphasis added).

It should be plain, however, that § 314's institution requirement is stated in the negative because while "reasonable likelihood [of invalidity]" is the *principal* basis for "institution of inter partes review," it is not the *only* such requirement. As noted previously, the statute itself places multiple other constraints on institution of review. The reason that § 314(a) does not state that the Director "shall institute" review is because other parts of the statute create additional conditions that may require denial of review. This statutory structure—and the Act's express articulation of standards for institution—cannot reasonably be construed to make the institution decision "purely" or "absolutely" discretionary.

---

[8] Contrast § 314 with other parts of the inter partes review statute, such as the joinder provision, which allows the Director to join a later petition to a pending review "in his or her discretion." 35 U.S.C. § 315(c).

**2.**     Nor is the PTAB's decision to conduct a validity review analogous to the types of administrative decisions that the Supreme Court has identified as inherently or structurally unreviewable and thus entirely discretionary.  These types of decisions include: (1) "an agency's decision not to enforce" a regulation or initiate a prosecution; (2) "an agency's refusal to grant reconsideration of an action because of material error;" (3) the decision "to terminate an [intelligence] employee in the interests of national security;" and (4) "[t]he allocation of funds from a lump-sum appropriation."  *Lincoln v. Vigil*, 508 U.S. at 191-92.

USPTO's amici contend that PTAB institution is equivalent to "an agency's decision not to prosecute or enforce . . . through civil or criminal process."  Retired Officials Brief in No. 25-132, at 11 (quoting *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)).  But PTAB proceedings are not enforcement proceedings in which the agency investigates and prepares its case.  They are adjudicative proceedings in which the *petitioner* develops the evidence and brings the case to the agency—the PTAB simply decides whether the petitioner has met its burden of proof.  Broad discretion is necessary for *investigative* proceedings because an agency typically cannot investigate and bring proceedings in every potential case.

*See Heckler v. Chaney*, 470 U.S. at 83 (enforcement discretion is unreviewable because "[a]n agency generally cannot act against each technical violation of the statute it is charged with enforcing").

In the case of PTAB proceedings, by contrast, there is no question that the USPTO *can* address the merits of every PTAB petition that is presented to it—it *did* address the merits of almost every petition before the agency's recent enthusiasm for "discretionary denials."  There is no enforcement-discretion justification for exempting PTAB institution decisions from this Court's review.

Nor is the USPTO correct in suggesting that PTAB institution is analogous to a decision to grant rehearing or to grant a new trial. *See* USPTO Brief in No. 25-134 at 22 n. 3 (citing *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33 (1980)).  As *Allied Chemical* itself notes, new-trial rulings are not reviewable on mandamus because "[a] litigant is free to seek review of the propriety of such an order on direct appeal after a final judgment," 449 U.S. at 36—which is not the case for PTAB institution decisions.

In addition, as the precedent cited by *Allied Chemical* notes, even a federal judge's decision to defer or stay a case may be reviewable on mandamus "[w]here a district court obstinately

refuses to adjudicate a matter properly before it." *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 666 (1978).

**3.**     Finally, the notion that PTAB institution is absolutely discretionary and thus immune from all judicial review cannot be squared with precedent recognizing that aspects of the decision to institute (or to maintain institution) are, in fact, judicially reviewable. *See, e.g.*, *Uniloc 2017 LLC v. Facebook Inc.*, 989 F.3d 1018, 1027 (Fed. Cir. 2021) (determination whether § 315(e) requires de-institution is judicially reviewable); *Facebook, Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321, 1332 (Fed. Cir. 2020) (whether joinder-based institution was proper is judicially reviewable); *SAS Institute, Inc. v. Iancu*, 584 U.S. 357, 371 (2018) (whether institution for only a subset of the challenged claims was proper is judicially reviewable); *Apple Inc. v. Vidal*, 63 F.4th 1, 14-15 (Fed. Cir. 2023) (whether USPTO procedural rules governing institution are subject to APA rulemaking is judicially reviewable).

If all these other matters are judicially reviewable, there is room for this Court to address "blatant violations," *IGT v. Zynga Inc.*, 144 F.4th 1357, 1367 (Fed. Cir. 2025), of the Due Process Clause of the U.S. Constitution.

## CONCLUSION

The petition for relief should be granted.

Respectfully submitted,

/s/ *Joseph Matal*

Joseph Matal
CLEAR IP, LLC
888 16th St., NW
Suite 300
Washington, DC 20006
(202) 654-4500
Joseph.Matal@clearpatents.com

*Counsel for Amici Curiae*

Dated: August 22, 2025

**Addendum**

The following are PTAB petitions that were filed before the rescission of the Vidal memo and subsequently denied under a *Fintiv* bar despite the petitioner's entry of a *Sotera* stipulation:

*REC Solar Holdings AS v. Maxeon Solar Pte. Ltd.*, IPR2025-00592, -00593, -00594, -00595 (Aug. 14, 2025); *Samsung Elecs. Co., Ltd. v. iCashe, Inc.*, IPR2025-00639, -00640, -00641, -00642, -00643, -00644, -00645 (Aug. 14, 2025); *Microsoft Corp. v. Dialect, LLC*, IPR2025-00655, -00656, -00657, -00658, -00659 (Aug. 14, 2025); *TSMC v. Advanced Integrated Circuit Process LLC*, IPR2025-00682, -00683 (Aug. 14, 2025); *Samsung Elecs. Co., Ltd. v. GenghisComm Holdings, LLC*, IPR2025-00780, -00781 (Aug. 14, 2025); *TCL Elecs. Holdings Ltd. v. Maxell Ltd.*, IPR2025-00120 (Aug. 6, 2025); *Samsung Elecs. Co. v. Cerence Operating Co.*, IPR2025-00457 (Aug. 4, 2025); *Samsung Elecs. Co., Ltd. v. Headwater Rsch. LLC*, IPR2025-00481, -00483, -00484 (Aug. 4, 2025); *Transcend Information Inc. v. Truesight Communications LLC*, IPR2025-00723 (Aug. 4, 2025); *Linkplay Technology Inc. v. Sonos, Inc.*, IPR2025-00509, -00510, -00511 (Jul. 31, 2025); *NVIDIA Corp. v. Neural AI, LLC*, IPR2025-00606, -00608 (Jul. 31, 2025); *Liberty Energy Inc. v. U.S. Well Servs., LLC*, IPR2025-00778 (Jul. 31, 2025); *BOE Technology Group Co., Ltd. v. Optronic Sciences LLC*, IPR2025-00238, -00239 (Jul. 29, 2025); *Amazon.com, Inc. v. KAIFI LLC*, IPR2025-00624, -00625, -00626, -00627 (Jul. 29, 2025); *T-Mobile USA, Inc., AT&T Mobility LLC, Cellco Partnership d/b/a/ Verizon Wireless, Ericsson Inc., and Nokia of Am. Corp. v. Smart RF, Inc.*, IPR2025-00612, -00691, -00692, -00727 (Jul. 29, 2025); *Green Revolution Cooling Inc v. Midas Green Technologies LLC*, IPR2025-00196 (Jul. 25, 2025); *Samsung Elecs. Co., Ltd. v. Headwater Rsch. LLC*, IPR2025-00482 (Jul. 24, 2025); *Samsung Elecs. Co., Ltd. v. Headwater Rsch. LLC*, IPR2024-01396, -01407 (Jul. 22, 2025); *Samsung Elecs. Co., Ltd. v. Mullen Indus. LLC*, IPR2025-01472, -00018, -00019, -00121, -00124 (Jul. 17, 2025); *Coretronic Corp. v. Maxell, Ltd.*, IPR2025-00475 (Jul. 17, 2025); *Samsung Elecs. Co. Ltd. v. Four Batons Wireless, LLC*, IPR2025-00493, -00494, -00495, -00496 (Jul. 17, 2025); *Samsung Elecs. Co. Ltd. v. Keyless Licensing LLC*, IPR2025-00526, -00527, -00528, -00529 (Jul. 17, 2025); *IBM Corp. v. Virtamove Corp.*, IPR2025-00591, -00599 (Jul. 17, 2025); *Samsung Elecs. Co. Ltd. v. OS-New Horizon Personal Computing*

*Solutions Ltd.*, IPR2025-00613 (Jul. 17, 2025); *Sportradar AG v. SportsCastr Inc.*, IPR2025-00313, -00314, -00315, -00316 (Jul. 16, 2025); IPR2025-00634, -00635 (Jul. 24, 2025); *Kangxi Communication Techs. (Shanghai) Co., Ltd. v. Skyworks Solutions, Inc.*, IPR2025-00372, -00373 (Jul. 16, 2025); *Phison Elecs. Corp. v. Vervain, LLC*, IPR2025-00213, -00214, -00215 (Jul. 10, 2025); *SAP America, Inc. v. Valtrus Innovations Ltd.*, IPR2025-00414, -00415, -00416, -00417, -00418, -00420 (Jul. 10, 2025); *Samsung Elecs. Co. Ltd. v. Vasu Holdings, LLC*, IPR2025-00446, -00447, -00448, -00449, -00450 (Jul. 10, 2025); *Coretronic Corp. v. Maxell, Ltd.*, IPR2025-00474, -00476, -00477 (Jul. 10, 2025); *NXP USA, Inc. and Qualcomm Inc. v. Redstone Logics LLC*, IPR2025-00485 (Jul. 10, 2025); *Samsung Elecs. Co. Ltd. v. Mobile Data Techs., LLC*, IPR2025-00535, -00536 (Jul. 10, 2025); *Solus Advanced Materials Co., Ltd. V. SK nexilis, Co., Ltd.*, IPR2024-01463 (Jul. 2, 2025); *Lam Research Corp. v. Inpria Corp.*, IPR2025-00256, -00309 (Jul. 2, 2025); *Entegris, Inc. v. Inpria Corp.*, IPR2025-00267 (Jul. 2, 2025); *Samsung Elecs. Co., Ltd. V. Sinotechnix LLC*, IPR2025-00331, -00333, -00335, -00336 (Jul. 2, 2025); *Cellco Partnership v. Pegasus Wireless Innovation LLC*, IPR2025-00137, -00138, -00290, -00291, -00292, -00293, -00317 (Jun. 26, 2025); *Google LLC v. Truesight Communications LLC*, IPR2025-00024, -00025 (Jun. 25, 2025); *Sportradar AG v. SportsCastr Inc.*, IPR2025-00265, -00266, -00268, -00269, -00273, -00275 (Jun. 25, 2025); *Google LLC v. Mullen Industries LLC*, IPR2025-00197, -00227, -00365, -00366, -00367, -00368, -00369 (Jun. 25, 2025); *Cisco Systems Inc v. WSOU Investments LLC*, IPR2025-00429 (Jun. 25, 2025); *Samsung Electronics America Inc. v. Cerence Operating Co.*, IPR2025-00458, -00459, -00460 (Jun. 25, 2025); *Celltrion Inc v. Regeneron Pharmaceuticals Inc.*, IPR2025-00456 (Jun. 25, 2025); *Advanced Micro Devices, Inc. v. Xtreamedge Inc.*, IPR2025-00223 (Jun. 12, 2025); *Shenzhen Tuozhu Technology Co., Ltd. v. Stratasys Inc.*, IPR2025-00354 (Jun. 12, 2025); *Samsung Bioepis Co Ltd v. Regeneron Pharmaceuticals Inc.*, IPR2025-00176, -00233 (Jun. 2, 2025); *TCL Elecs. Holdings Ltd. v. Maxell Ltd.*, IPR2025-00134, -00135 (May 20, 2025); *Cipla Ltd v. Gilead Sciences Inc.*, IPR2025-00033 (May 15, 2025); *Innolux Corp v. Phenix Longhorn LLC*, IPR2025-00043 (May 15, 2025); *Ericsson Inc. v. Procomm International Pte. Ltd.*, IPR2024-01455 (May 16, 2025); IPR2024-01452, -01454 (Jun. 25, 2025); *Samsung Elecs. Am., Inc. v. Collision Commc'ns, Inc.*, IPR2025-00011 (Apr. 28, 2025); *Nokia of America*

*Corp. v. Pegasus Wireless Innovation LLC*, IPR2025-00036, -0037 (Apr. 25, 2025); *Ericsson Inc. v. Pegasus Wireless Innovation LLC*, IPR2025-00084 (Jun. 6, 2025); *Solus Advanced Materials Co., Ltd. V. SK nexilis, Co., Ltd.*, IPR2024-01460 (Apr. 25, 2025); *Google LLC v. Cerence Operating Co.*, IPR2024-01465, -01464 (Apr. 23, 2025); *Samsung Elecs. Co., Ltd. v. Truesight Commc'ns LLC*, IPR2025-00123, -01477 (Apr. 21, 2025); *Lenovo (United States) Inc. v. Universal Connectivity Technologies, Inc.*, IPR2024-01482, -01481 (Apr. 17, 2025); *Charter Commc'ns, Inc. v. Adaptive Spectrum and Signal Alignment, Inc.*, IPR2024-01379 (Apr. 17, 2025); IPR2025-00012, -00013 (Apr. 28, 2025); IPR2025-00087 (May 5, 2025); IPR2025-00088 (May 21, 2025); *HP Inc. v. Universal Connectivity Technologies, Inc.*, IPR2024-01429 (Apr. 16, 2025); *Samsung Elecs. Co., Ltd. v. SiOnyx, LLC*, IPR2025-00064, -00065 (Apr. 10, 2025); *SAP America, Inc. v. Cyandia, Inc.*, IPR2024-01496, -01495, -01432 (Apr. 7, 2024); *Dell Inc. v. Universal Connectivity Technologies, Inc.*, IPR2024-01479, -01478 (Apr. 7, 2025); -01428 (Apr. 8, 2025); -01480 (Apr. 24, 2025); *Apple Inc. v. Haptic, Inc.*, IPR2024-01476, -01475 (Apr. 4, 2025); IPR2024-01284, -01285, -01313, -01314 (May 23, 2025); *Motorola Solutions, Inc. v. Stellar, LLC*, IPR2024-01205, -01206, -01207, -01208 (Mar. 28, 2025).

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel for amici curiae certifies that this brief:

(3)    complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(b)(4) and Federal Circuit Rule 40(i)(3) because it contains 3883 words, including footnotes and excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b); and

(4)    complies with the typeface and style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because this document has been prepared using Microsoft Office Word and is set in the Bookman Old Style font in a size equivalent to 14 points or larger.

Dated:  August 22, 2025                    /s/ _Joseph Matal_____